**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ARCELOR FRANCE and ARCELOR ATLANTIQUE ET LORRAINE, | ) ) ) | |
| Plaintiffs, | ) ) | C. A. No. 06-307-SLR |
| v. | ) ) ) | |
| MITTAL STEEL USA INC., | ) ) | |
| Defendant. | ) ) | |

**DEFENDANT MITTAL STEEL USA INC.'S OPENING BRIEF IN SUPPORT OF
ITS MOTION TO DISMISS THE COMPLAINT OR, ALTERNATIVELY, FOR
SUMMARY JUDGMENT OF NON-INFRINGEMENT**

OF COUNSEL:

Joseph W. Berenato, III
Berenato, White & Stavish, LLC
6550 Rock Spring Drive, Ste. 240
Bethesda, Maryland 20817
(301) 896-0600

Kenneth B. Herman
Ropes & Gray
1251 Avenue of the Americas
New York, New York 10020-1105
(212) 596-9020

Dated: May 23, 2006

Philip A. Rovner (#3215)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
E-mail: provner@potteranderson.com

Attorneys for Defendant
Mittal Steel USA Inc.

**TABLE OF CONTENTS**

NATURE AND STAGE OF THE PROCEEDING.................................................................1

SUMMARY OF ARGUMENT .................................................................................................2

STATEMENT OF FACTS ........................................................................................................3

LEGAL ARGUMENT ...............................................................................................................5

    I.    Arcelor's Complaint Fails To Set Forth Sufficient Information
        Outlining A Claim of Patent Infringement Against Mittal ..........................................5

    II.    Arcelor's Allegations Lack Any Basis In Law Or Fact, And
        Cannot Support A Claim Of Patent Infringement..........................................................7

    III.    Even If Arcelor's Pre-Filing Analysis Was Sufficient, Mittal Does
        Not Infringe The '805 Patent And Summary Judgment Is Warranted ...................10

        A.    The Pertinent Law .........................................................................................10

        B    The Pertinent Facts........................................................................................13

CONCLUSION.........................................................................................................................18

# TABLE OF AUTHORITIES

## CASES

*Advanced Cardiovascular Systems, Inc. v. Scimed Life Systems, Inc.*,
   988 F.2d 1157 (Fed. Cir. 1993)........................................................................10

*Aro Manufacturing v. Convertible Top Replacement Co.*,
   365 U.S. 336, 5 L. Ed. 2d 592, 81 S. Ct. 599 (1961)....................................12

*In re Burlington Coat Factory Securities Litigation*,
   114 F.3d 1410 (3d Cir. 1997)............................................................................6

*Celotex Corp. v. Catrett*,
   477 U.S. 317, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)..............................11

*Classen Immunotherapies, Inc. v. Biogen IDEC*,
   381 F. Supp. 2d 452 (D. Md. 2005)..................................................................7

*Colburn v. Upper Darby Township*,
   838 F.2d 663 (3d Cir. 1988)..............................................................................6

*Conley v. Gibson*,
   355 U.S. 41, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)............................................5

*Ditri v. Coldwell Banker Residential Affiliates, Inc.*,
   954 F.2d 869 (3d Cir. 1992)..............................................................................5

*E.I. DuPont de Nemours & Co. v. Great Lakes Chemical Corp.*,
   383 F. Supp. 2d 642 (D. Del. 2005)..................................................................5

*Enzo Life Sciences, Inc. v. Digene Corp.*,
   295 F. Supp. 2d 424 (D. Del. 2003)..................................................................6

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
   344 F.3d 1359 (Fed. Cir. 2003)......................................................................16

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
   535 U.S. 722, 152 L. Ed. 2d 944, 122 S. Ct. 1831 (2002).............................16

*Hoffmann- La Roche, Inc. v. Invamed Inc.*,
   213 F.3d 1359 (Fed. Cir. 2000)........................................................................9

*Honeywell International, Inc. v. Universal Avionics Systems Corp.*,
   398 F. Supp. 2d 305 (D. Del. 2005)..................................................................9

*Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.,*
    370 F.3d 1131 (Fed. Cir. 2004), *cert. denied*, 125 S. Ct. 2928 (2005) ...................16

*J.E. Mamiye & Sons, Inc. v. Fidelity Bank,*
    813 F.2d 610 (3d Cir. 1987) .......................................................................11

*Johnson & Johnston Associates Inc. v. R.E. Service Co., Inc.,*
    285 F.3d 1046 (Fed. Cir. 2002).............................................................15, 16

*Judin v. U.S.,*
    110 F.3d 780 (Fed. Cir. 1997).............................................................8, 10

*Kost v. Kozakiewicz,*
    1 F.3d 176 (3d Cir. 1993)...........................................................................6

*Lemelson v. United States,*
    752 F.2d 1538 (Fed. Cir. 1985)...............................................................12

*Met-Coil System Corp. v. Engel Industries, Inc.,*
    C.A. No. 93-1416, 1994 U.S. App. LEXIS 4886 (Fed. Cir. 1994)....................11

*Mobil Oil Corp. v. Linear Films, Inc.,*
    718 F. Supp. 260 (D. Del. 1989)................................................................11

*Pareto v. F.D.I.C.,*
    139 F.3d 696 (9th Cir. 1998) .....................................................................6

*Q-Pharma, Inc. v. Andrew Jergens Co.,*
    360 F.3d 1295 (Fed. Cir. 2004)...................................................................9

*Rotec Industries, Inc. v. Mitsubishi Corp.,*
    215 F.3d 1246 (Fed. Cir. 2000)..................................................................10

*S. Bravo Systems, Inc. v. Containment Technologies Corp.,*
    96 F.3d 1372 (Fed. Cir. 1996).....................................................................8

*SRI International v. Matsushita Electric Corp. of America,*
    775 F.2d 1107 (Fed. Cir. 1985)..................................................................12

*Smithkline Beecham Corp. v. Excel Pharmaceuticals, Inc.,*
    356 F.3d 1357 (Fed. Cir. 2004)..................................................................16

*Sturm v. Clark,*
    835 F.2d 1009 (3d Cir. 1987).......................................................................5

*View Engineering, Inc. v. Robotic Vision Systems, In*c.,
  208 F.3d 981 (Fed. Cir. 2000) ................................................................................2, 7, 8, 9

*Wahpeton Canvas Co., Inc. v. Frontier, Inc.,*
  870 F.2d 1546 (Fed. Cir. 1989) ................................................................................14

*Wang Laboratories, Inc. v. America Online, Inc.,*
  197 F.3d 1377 (Fed. Cir. 1999) ................................................................................11

## STATUTES AND RULES

35 U.S.C. § 112 ................................................................................................................3, 16

Fed. R. Civ. P. 11 ............................................................................................................7, 8

Fed. R. Civ. P. 12(b)(6) ................................................................................................5, 7, 10

Fed. R. Civ. P. 56 ............................................................................................................10

Fed. R. Civ. P. 56(e) ......................................................................................................12

## MISCELLANEOUS

A. Wright & Authur R. Miller, *Federal Practice and Procedure* § 1357
  (2d ed. 1990) ................................................................................................................6

The law is well-settled that a patent infringement suit may not be filed on suspicion or prior to a comparison of the claims to an accused product. Plaintiffs have not and, more significantly, could not, have examined a hot-rolled coated steel sheet "comprising a hot-rolled steel sheet coated with an aluminum or aluminum alloy coating" because Mittal Steel USA Inc. does not make and has made no such product. Thus, there was no and could not have been any good faith belief in infringement, and the litigation should be dismissed. Moreover, because Plaintiffs specifically disclaimed during prosecution that their patent covered cold-rolled steel, Defendant cannot infringe, literally or by equivalence, by the manufacture, sale or use of cold-rolled steel having an aluminum or aluminum alloy coating.

## NATURE AND STAGE OF THE PROCEEDING

On May 9, 2006, without notice or warning, Arcelor France filed a complaint against defendant Mittal Steel USA Inc. ("Mittal") asserting infringement of Arcelor's U.S. Patent No. 6,296,805.[1] All claims in the '805 patent are expressly limited to hot-rolled coated steel sheet "comprising a hot-rolled steel sheet coated with an aluminum or aluminum alloy coating," with the coated hot-rolled steel having a specified chemical composition and mechanical properties after thermal treatment.

Mittal hereby moves to dismiss Arcelor's complaint for failure to state a claim upon which relief can be granted because Mittal has not made, used, sold, offered to sell

---

[1] On May 16, 2006, an amended complaint was filed adding Arcelor Atlantique et Lorraine as a plaintiff. Other than identifying Arcelor Atlantique et Lorraine as a purported co-owner of the '805 patent, no other substantive changes to the complaint were made. Plaintiffs are collectively referred to herein as "Arcelor."

or imported a hot-rolled steel sheet "comprising a hot-rolled steel sheet coated with an aluminum or aluminum alloy coating" having the specified chemical composition and mechanical properties. As set forth herein, had Arcelor made even a minimal inquiry, let alone conducted a "reasonable pre-suit investigation" as the Federal Circuit Court of Appeals requires, it would have known that Mittal does not - and cannot - infringe even one claim of Arcelor's patent.

Alternatively in the event the Court deems Arcelor's complaint and its pre-filing investigation sufficient, Mittal moves for summary judgment of non-infringement because it does not make and has not made any product falling within the scope of the claims of the '805 patent.

## SUMMARY OF ARGUMENT

There are no genuine issues of fact here. The claims of the '805 patent are limited to hot-rolled steel sheet coated with aluminum or an aluminum alloy. Mittal does not and has not made such sheets. If there is any debate here, it is an issue of law that the Court may and should resolve.

1. Before filing a claim of patent infringement, a party is required to, "at a bare minimum, apply the claims of each and every patent that is being brought into the lawsuit to an accused device and conclude that there is a reasonable basis for a finding of infringement of at least one claim of each patent so asserted." *View Engineering, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000).

2. If Arcelor had conducted even a minimal pre-suit investigation, let alone a reasonable and competent pre-filing inquiry interpreting the claims of its patent and comparing the thus construed patent claims with any Mittal product, as required, it would

have quickly learned that there is no basis for its vague claims of patent infringement because Mittal does not make, use, sell, offer to sell or import a hot-rolled steel sheet "comprising a hot-rolled steel sheet coated with an aluminum or aluminum alloy coating" as claimed in the '805 patent.

3.    Arcelor did not notify Mittal of its patent infringement allegations, or even attempt to obtain information from Mittal regarding Mittal's products, prior to filing its complaint.

4.    While Arcelor's patent application initially sought claims covering both hot-rolled steel and cold-rolled steel, it amended its claims and expressly limited them to hot-rolled steel. Arcelor cannot now assert that its amendment may be ignored, and that its patent covers both hot-rolled and cold-rolled steel.

### STATEMENT OF FACTS

U.S. Patent No. 6,296,805 ("the '805 patent") was granted October 2, 2001. The '805 patent has only one independent claim. That claim, Claim 1 of the '805 patent, is limited to a hot-rolled coated steel sheet "comprising a hot-rolled steel sheet coated with an aluminum or aluminum alloy coating . . .." (See Complaint, Exhibit A).

During prosecution of the '805 patent, application claim 1 was originally directed to "Hot-rolled steel sheet, which then may be cold-rolled . . .." Application claim 1 was rejected by the examiner at the U. S. Patent and Trademark Office for various reasons, including on account of indefiniteness under 35 U.S.C. § 112, second paragraph. (Declaration of Joseph W. Berenato, III, submitted contemporaneously herewith, Exhibit 1, pgs. 85-99)( "Berenato Dec.").

3

In response to the rejection, application claim 1 was amended to delete the reference to cold-rolled steel and to add the claim element "A hot-rolled coated steel sheet . . . comprising a hot-rolled steel sheet coated with an aluminum or aluminum alloy coating " (Berenato Dec., Exhibit 1, pgs. 106-118). Mittal, however, does not make, use, offer for sale, sell or import hot-rolled steel of the sort to which the claims of the '805 patent are expressly limited.

Arcelor has asserted publicly that it "suspects Mittal of copying one of its processes," [translated from French original] based upon (1) inquiries from Arcelor's clients, and (2) information developed by accessing without authorization Mittal's intranet. (Berenato Dec., Exhibit 2). However, no one on behalf of Arcelor, let alone a patent attorney, could have construed the claims of the '805 patent against a hot-rolled steel sheet coated with aluminum or an aluminum coating actually manufactured, sold or used by Mittal, because Mittal simply does not manufacture, sell or use such steel. Not only did Arcelor fail to give Mittal notice of the '805 patent prior to filing suit, it never even sought to obtain from Mittal a sample of the allegedly infringing steel.[2]

Upon receipt of the Complaint, counsel for Mittal wrote counsel for Arcelor asking that Arcelor explain the basis of the suit and to identify the products alleged to infringe. (Berenato Dec , Exhibit 3). By letter of May 22, 2006, Arcelor's counsel confirmed that it had not examined a sample of Mittal's allegedly infringing steel prior to bringing suit. Rather, Arcelor responded by stating only that, based upon certain

---

[2] Although not directly relevant to Mittal's motion to dismiss, for purposes of assisting the court in understanding the context and manner in which Arcelor filed suit, Mittal notes that Mittal is engaged in a highly publicized hostile takeover of Arcelor.

"information" that it failed to identify, Mittal had made an aluminum coated sheet that "must be" infringing the patent. (Berenato Dec., Exhibit 4). The fact is, Mittal has made no such sheet that is "hot-rolled."

Mittal has made cold-rolled steel having an aluminum or aluminum alloy coating. Hot-rolled steel and cold-rolled steel are distinct products and are recognized as such within the steel industry.[3]

## LEGAL ARGUMENT

### I.    Arcelor's Complaint Fails To Set Forth Sufficient Information Outlining A Claim Of Patent Infringement Against Mittal.

The Federal Rules of Civil Procedure provide that a motion to dismiss should be granted if "a plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957). The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of a complaint. *Id.*; *Sturm v. Clark*, 835 F.2d 1009, 1011 (3d Cir. 1987); *E.I. DuPont de Nemours & Co. v. Great Lakes Chem. Corp.*, 383 F. Supp. 2d 642, 644-45 (D. Del. 2005). Review of a district court's dismissal under Rule 12(b)(6) is plenary. *Ditri v. Coldwell Banker Residential Affiliates, Inc.*, 954 F.2d 869, 871 (3d Cir. 1992).

In examining a complaint, the court assumes the truth of all well-pled allegations and construes the complaint in the light most favorable to the plaintiff, determining

---

[3] For the purposes of the motion, without waiving its right to assert any other basis for non-infringement or invalidity, Mittal will stipulate that it has made cold-rolled steel during a product development process, with the cold-rolled steel having an aluminum or aluminum alloy coating, and with the steel's chemical composition falling within the range set forth in claim 1 of the '805 patent.

whether under any reasonable reading of the pleadings, the plaintiff may be entitled to relief. *Colburn v. Upper Darby Twp.*, 838 F.2d 663, 665-66 (3d Cir. 1988). However, a court need not accept "bald assertions" or "legal conclusions" when determining if a complaint is sufficient to survive a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429 (3d Cir. 1997); see also *Enzo Life Scis., Inc. v. Digene Corp.*, 295 F. Supp. 2d 424, 426-27 (D. Del. 2003). Legal conclusions couched as factual allegations are not given a presumption of truthfulness and conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss. *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). Rather, the pleader is required to "set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993), *citing* Charles A. Wright & Authur R. Miller, *Federal Practice and Procedure* § 1357, at 340 (2d ed. 1990).

Arcelor's complaint does little more that advise the court that this is an action for patent infringement. Other than general allegations of infringement, all made "on information and belief," that Mittal makes, sells, or uses otherwise unidentified "aluminum coated boron steel products" which infringe one or more claims of the '805 patent, the complaint fails to provide any notice whatsoever as to which of Mittal's numerous products are alleged to infringe Arcelor's patent and the basis for that alleged infringement. This is not surprising, because the claims of the '805 patent are limited on their face and were particularly limited by Arcelor's voluntary amendment adding the limitation "comprising a hot-rolled steel sheet coated with an aluminum or aluminum alloy coating" and deleting "which then may be cold-rolled, coated." Thus, as a matter of

6

law, those claims do not cover all "aluminum coated boron steel products." Simply put, Mittal has not manufactured any hot-rolled steel of the sort to which the '805 patent is expressly limited.

As set forth more fully below, Arcelor's mere suspicions are not sufficient to justify the filing of this patent infringement suit or the cost to Mittal in defending against these unfounded averments.[4] Arcelor's complaint is deficient under the Federal Rules of Civil Procedure, amounting to nothing more than bald assertions and legal conclusions. Mittal should not be required to answer and defend against such vague allegations. In an analogous context, the court granted a motion to dismiss under Rule 12(b)(6) due to the inadequate pre-filing investigation of a patent plaintiff. *Classen Immunotherapies, Inc. v. Biogen IDEC*, 381 F Supp. 2d 452, 457 (D. Md. 2005), citing *View Engineering*, 208 F.3d at 986. The Court here should likewise dismiss the complaint.

## II.     Arcelor's Allegations Lack Any Basis In Law Or Fact, And Cannot Support A Claim Of Patent Infringement.

It is well-settled that, before filing a claim of patent infringement, a party is required to, "at a bare minimum, apply the claims of each and every patent that is being brought into the lawsuit to an accused device and conclude that there is a reasonable basis for a finding of infringement of at least one claim of each patent so asserted." *View Engineering*, 208 F.3d at 986. In *View Engineering*, the Federal Circuit Court of Appeals affirmed the district court's Rule 11 sanction against attorneys who filed counterclaims

---

[4] Arcelor also asserts that Mittal is inducing and contributing to infringement by others of the '805 patent. However, it neither identifies those being induced nor states the basis for how they are being induced. Nor does Arcelor explain how any claim of the '805 patent is being contributorily infringed.

involving eight patents without the requisite infringement analysis. *Id.* at 986-987. The

Federal Circuit observed that:

> A patent suit can be an expensive proposition. Defending against baseless
> claims of infringement subjects the alleged infringer to undue costs –
> precisely the scenario Rule 11 contemplates. Performing a pre-filing
> assessment of the basis of each infringement claim is, therefore, extremely
> important. In bringing a claim of infringement, the patent holder, if
> challenged, must be prepared to demonstrate to both the court and the
> alleged infringer exactly why it believed before filing the claim that it had
> a reasonable chance of proving infringement. Failure to do so should
> ordinarily result in the district court expressing its broad discretion in
> favor of Rule 11 sanctions, at least in the absence of a sound excuse or
> considerable mitigating circumstances.

*Id.* at 986. The Federal Circuit Court of Appeals has been unwavering in requiring that

plaintiff have a good faith belief based on the patent's claims compared against an

allegedly infringing product. More is required to initiate a complaint for patent

infringement than a generalized belief or suspicion that infringement "must be"

occurring. As the Federal Circuit explained in *Judin v. U.S.*, 110 F.3d 780 (Fed. Cir.

1997):

> Determining infringement, however, requires that the patent claims be
> interpreted and that the claims be found to read on the accused devices." *S.*
> *Bravo Systems, Inc. v. Containment Technologies Corp.*, 96 F.3d 1372,
> 1375 (Fed. Cir. 1996). . . . As in *S. Bravo Systems,* there is no evidence that
> Judin or his attorneys 'compared the accused devices with the patent
> claims' prior to filing the complaint. *See id.* (holding that trial court abused
> its discretion by denying a motion for Rule 11 sanctions without adequate
> explanation).[5]

*Id.* at 784.

---

[5] In *Judin*, the Federal Circuit made it clear that the inquiry must be undertaken *before*
the suit is filed, not after. As the court noted, "Defendants have no choice when served
with a complaint if they wish to avoid a default. They must undertake a defense, and that
necessarily involves costs. Rule 11 prohibits imposing those costs upon a defendant
absent a basis, well-grounded in fact, for bringing the suit." *Id.* at 785.

That Arcelor did not have unfettered access to Mittal's product line is no excuse for its failure to comply with the requirement of conducting a reasonable and competent pre-suit investigation. In *View Engineering*, the lawyers' explanation for not performing that investigation was that they and their client lacked physical access to the accused machines before filing the claims, and, therefore, filed the counterclaims to obtain "access to View's software and drawings." *Id.* at 985. The district court and Federal Circuit rejected this excuse and refused to shift the Rule 11 burden to the counterclaim defendant. *Id.* at 986-86. More recently, in *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295 (Fed. Cir. 2004), the Federal Circuit once again emphasized the importance of obtaining a sample of the accused product prior to initiating litigation ("[A]n infringement analysis can simply consist of a good faith, informed comparison of the claims of a patent against the accused subject matter."); and recently, this Court has recognized that "Generally, a patentee must conduct a reasonable investigation into potential infringement." *Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 398 F. Supp. 2d 305, 314 (D. Del. 2005).

As noted by the Federal Circuit in *Hoffmann-La Roche, Inc. v. Invamed Inc.*, 213 F.3d 1359 (Fed. Cir. 2000), the patent owner must at least *seek* from the accused infringer necessary information and then in its complaint may explain why its suit is well-taken. Significantly, Arcelor never approached Mittal to notify it of the '805 patent or ask for information to allow it to determine whether its "suspicions" were well-founded. Arcelor has conceded that it based its complaint on suspicion. According to an article in the Luxembourg press (Luxembourg is the home jurisdiction of the Arcelor family of companies)(Berenato Dec., Exhibit 2) reporting on this lawsuit in the context of Mittal's

hostile takeover of Arcelor, "Arcelor suspects Mittal of copying one of its processes used in the automotive sector." Mere suspicion does not amount to a reasonable and competent inquiry. *Judin, supra*. The article goes on to state that Arcelor became aware of "supposed tricks by its rival Mittal" from two sources: (1) Arcelor's clients, and (2) Arcelor's IT staff, which supposedly discovered information on Mittal's intranet corroborating its suspicions. The article notes that "Arcelor engaged the services of lawyers . . . in order to corroborate the legality of Arcelor's 'intrusion' on its rival intranet platform." However, no mention is made about Arcelor engaging the services of patent lawyers to interpret the claims of its '805 patent.

If an investigation had been conducted or an inquiry made of Mittal, Arcelor would have learned and could easily have satisfied itself that Mittal could not infringe the '805 patent, because Mittal simply does not manufacture, use or sell "hot-rolled steel sheet coated with aluminum or an aluminum alloy." (Declaration of Blake K. Zuidema, Ph. D., submitted contemporaneously herewith, ¶ 4 ("Zuidema Dec.")). Moreover, routine analysis allows steelmakers to determine whether a given sheet of steel is hot-rolled or cold-rolled. (Zuidema Dec., ¶ 9). Having failed to undertake any legally required analysis in its rush to file suit, Arcelor's complaint should not be deemed legally sufficient. The complaint should be dismissed.

### III.    Even If Arcelor's Pre-Filing Analysis Was Sufficient, Mittal Does Not Infringe The '805 Patent And Summary Judgment Is Warranted.

### A. The Pertinent Law

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) may be treated as a motion for summary judgment under Rule 56 if matters outside the complainant's pleading are presented to the court. Fed. R. Civ. Proc. 12(b); *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1164 (Fed. Cir. 1993); *Rotec Indus. Inc. v.*

*Mitsubishi Corp.*, 215 F.3d 1246, 1250 (Fed. Cir. 2000). Such extra-pleading matters

contemplated by Rule 12(b) include depositions, admissions or affidavits. *Met-Coil Sys.*

*Corp. v. Engel Indus., Inc.*, C.A. No. 93-1416, 1994 U.S. App. LEXIS 4886 (Fed. Cir.

1994) (Ex. A hereto). In the present case, Mittal submits the Declaration of Dr. Blake

Zuidema, Director of Product Applications, USA, Research and Development Center.

"[A] motion for summary judgment must be granted unless the party opposing the

motion can adduce evidence which, when considered in light of that party's burden of

proof at trial, could be the basis for [the finder of fact] finding in that party's favor." *J.E.*

*Mamiye & Sons, Inc. v. Fidelity Bank*, 813 F.2d 610, 618 (3d Cir. 1987) (Becker, J.,

concurring). The party opposing the motion cannot rely upon mere denials, but must

instead establish a genuine dispute as to a material fact. The party moving for summary

judgment need not prove a negative, and may establish that there are no disputes of fact

sufficient to warrant judgment for the party opposing the motion. *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548, 2552-3 (1986) ("we find

no express or implied requirement in Rule 56 that the moving party support its motion

with affidavits or other similar materials *negating* the opponent's claims"); see also *Wang*

*Labs, Inc. v. America Online, Inc.*, 197 F.3d 1377 (Fed. Cir. 1999) (affirming summary

judgment of no literal or equivalence infringement).

In *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260 (D. Del. 1989),

defendant Linear Film brought a motion to dismiss because it did not make or sell any

products which allegedly infringed plaintiff Mobil Oil's patent. Linear Film's motion to

dismiss was converted into one for summary judgment pursuant to Rule 12(b). *Id.* at 262,

n.1. Summary judgment was ultimately granted in favor of Linear Films in light of

plaintiff Mobil Oil's failure to present any evidence supporting its claims of patent infringement:

> The foregoing affidavits and attachments constitute strong evidence in support of the defendants' position that the Delaware corporation never produced or sold any products, and that it therefore could not have directly infringed Mobil's patents. For its part plaintiff contends that the Delaware corporation did indeed manufacture and sell the accused products, thereby infringing Mobil's patents . . .. Plaintiff's statements are merely arguments, not evidence. It has produced no affidavits or other evidence contemplated by Rule 56(e), Fed. R. Civ. Proc., from which a reasonable fact finder could conclude that the Delaware corporation directly made or sold stretch film, thereby infringing upon Mobil's patent rights. . . . [T]he Court holds, as a matter of law, that the Delaware corporation could not have directly infringed Mobil's patent because the uncontroverted evidence establishes that it did not make or sell any stretch film.

*Id.* at 265.

In the case at bar, all of the claims in the '805 patent are directed to a hot-rolled coated steel sheet "comprising a hot-rolled steel sheet coated with an aluminum or aluminum alloy coating", a specified chemical composition, and specified mechanical properties after thermal treatment. *See* Complaint, Exhibit A, claims 1-16. The courts have adhered to the fundamental principle that claims define the scope of patent protection. *See, e.g., Aro Mfg. v. Convertible Top Replacement Co.*, 365 U.S. 336, 339, 5 L. Ed. 2d 592, 81 S. Ct. 599 (1961) ("The claims made in the patent are the sole measure of the grant"); *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) ("It is the claims that measure the invention.").

To establish literal infringement of a patent, a patentee must prove by a preponderance that the accused product meets every element or limitation of a claim. *Lemelson v. United States*, 752 F.2d 1538, 1551 (Fed. Cir. 1985) ("It is . . . well settled that each element of a claim is material and essential, and that in order for a court to find

infringement, the plaintiff must show the presence of every element . . . in the accused device.").

## B. The Pertinent Facts

While normally a summary judgment motion would be filed only after discovery, in the present case Arcelor should not be heard to complain that it needs discovery from Mittal. If Arcelor had conducted a satisfactory pre-filing investigation, it would possess information about the Mittal product.

Below is Claim 1, the only independent claim of the '805 patent, with brackets and underlining illustrating what was added and deleted from the originally filed claim.

> 1. A [Hot-rolled] hot-rolled coated steel sheet comprising a hot-rolled steel sheet coated with an aluminum or aluminum alloy coating,[which then may be cold-rolled, coated] wherein the steel in the sheet [having] comprises the following composition by weight:
>
> 0.15%<carbon<0.5%
>
> 0.5%<manganese<3%
>
> 0.1%<silicon<0.5%
>
> 0.01%<chromium<1%
>
> titanium<0.2%
>
> aluminum<0.1%
>
> phosphorus<0.1%
>
> sulfur<0.05%
>
> 0.0005%<boron<0.08%, the remainder being iron and impurities inherent in processing, and the steel sheet [ensuring] has a very high mechanical resistance after thermal treatment and the [aluminum-based] aluminum or aluminum alloy coating provides a high resistance to corrosion of the steel sheet.

(Berenato Dec., Exhibit 1, pg. 114).

Mittal does not make, use, sell, offer to sell or import a hot-rolled coated steel sheet "comprising a hot-rolled steel sheet coated with an aluminum or aluminum alloy coating" as claimed in the '805 patent. (Zuidema Dec., ¶ 4). Mittal cannot as a matter of law infringe literally the '805 patent. Because the independent claim is not infringed, then no dependent claim can be infringed. *Wahpeton Canvas Co., Inc v Frontier, Inc.*, 870 F.2d 1546, 1552 n.9 (Fed. Cir. 1989).

Mittal also cannot infringe under the doctrine of equivalents. Hot-rolled steel and cold-rolled steel are separate and distinct products in the steel industry. (Zuidema Dec. ¶¶ 5-6). They are marketed as separate products to customers. An end user may not merely substitute cold-rolled steel for hot-rolled steel and vice versa. (Zuidema Dec., ¶ 6). According to "The Making, Shaping, and Treating of Steel" the leading treatise on steelmaking, "Flat-rolled steel products fall into two major categories: hot rolled and cold rolled." (Zuidema Dec., ¶ 7). Moreover, standard techniques used in the steel industry allow steelmakers to ascertain whether a given sheet of steel is hot-rolled or cold-rolled. (Zuidema Dec., ¶ 9).

Not only does the '805 patent in its very title distinguish between hot-rolled and cold-rolled steel but Arcelor's web site distinguishes between the products. According to Arcelor's web site at http://www.arcelor.com/index.php?lang=en&page=95&tb0=0, "The Arcelor Flat Carbon Steel product portfolio covers the full range of flat carbon steels, including slabs, heavy plate, hot rolled coils, cold rolled coils and metallic and organic coated steel." (Zuidema Dec., ¶ 7). Likewise, in its 2005 Annual Report to shareholders, Arcelor distinguishes between hot rolled products and cold rolled products. (Zuidema Dec., ¶ 8). As reported with apparent approval by Arcelor, the U.S. International Trade

14

Commission and its counterparts in other countries classify hot rolled steel and cold rolled steel as different products for duty payment purposes. (Zuidema Dec., ¶ 8).

The '805 patent itself recognizes that hot-rolled steel and cold-rolled steel are different. A plain reading of the claims makes clear that the claims do not cover cold-rolled steel, because hot-rolled steel and cold-rolled steel are recognized as different products. (Zuidema Dec., ¶ 6). Mittal submits that the Court need go no further than a simple reading of claim 1 to confirm that the claims are by the very language limited to "hot-rolled steel."

Any doubt as to whether the claims may cover cold-rolled sheet is allayed by examination of the prosecution history. Arcelor's original patent claims sought to cover cold-rolled steel and hot-rolled steel, but those claims were amended to eliminate reference to cold-rolled steel after being rejected. (Berenato Dec., Exhibit 1, pgs. 85-99). As a result, the claims of the '805 patent, as amended by Arcelor during prosecution of the application, are limited to hot-rolled steel "comprising a hot-rolled steel sheet coated with an aluminum or aluminum alloy coating." (Berenato Dec., Exhibit 1, pgs. 106-116). Having deleted "which then may be cold-rolled" from the claims, Arcelor cannot now ignore that feature by arguing that either cold-rolled steel is hot-rolled steel or that cold-rolled steel is equivalent to hot-rolled steel. Hence, examination of the prosecution history confirms that the claims do not and cannot cover cold-rolled steel.

Having disclosed cold-rolled steel and then having amended its claims to preclude coverage of cold-rolled steel, Arcelor has dedicated to the public cold-rolled steel and may not recapture cold-rolled steel under the doctrine of equivalents. *See Johnson & Johnston Assoc. Inc. v. R.E. Service Co., Inc.,* 285 F.3d 1046, 1054 (Fed. Cir. 2002). In

*Johnson & Johnston, id*, the patent claimed "a sheet of aluminum" even though the patent disclosed that other metals could be used. The Federal Circuit reversed the district court's finding of infringement under the doctrine of equivalents because the patentee could not "recapture subject matter deliberately left unclaimed." *Id*. For like reasons, Arcelor's patent cannot now cover cold-rolled steel sheet having an aluminum or aluminum alloy coating.

Moreover, the fact that the claim was rejected under 35 U.S.C. § 112, second paragraph, does not allow the amendment to be ignored. *Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1141 (Fed. Cir. 2004), *cert. denied,* 1255 S. Ct. 2928 (2005). As explained in *Smithkline Beecham Corp. v. Excel Pharms., Inc.*, 356 F.3d 1357 (Fed. Cir. 2004).

> According to the Supreme Court in *Festo,* "a narrowing amendment made to satisfy any requirement of the *Patent Act* may give rise to an estoppel." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 736, 152 LEd. 2d 944, 122 S. Ct. 1831 (2002) (Festo VIII). Such a narrowing amendment, whether made to avoid prior art or to comply with § 112, creates a presumption that the patentee surrendered the territory between the original claims and the amended claims. *Id. at 741.* The patentee may rebut that presumption by showing that the alleged equivalent could not reasonably have been described at the time the amendment was made, or that the alleged equivalent was tangential to the purpose of the amendment, or that the equivalent was not foreseeable (and thus not claimable) at the time of the amendment. *Id. at 740-41.* This court has recently acknowledged and applied these rebutting criteria. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 344 F.3d 1359 (Fed. Cir. 2003)*

*Id.* at 1361. In the present instance, the narrowing amendment was made for the very purpose of overcoming a rejection based upon indefiniteness. (Berenato Dec., Exhibit 1, pgs. 87-88). Having chosen to amend by deleting reference to cold-rolled steel and limiting the claim to "a hot-rolled steel sheet coated with an aluminum or aluminum alloy

coating", Arcelor cannot now claim that "cold-rolled steel" could not be described or that "cold-rolled steel" was tangential to the purpose of the amendment. In short, none of the recognized rebuttals to the presumptive effect of a narrowing amendment are present. Arcelor chose voluntarily to limit its claims by expressly deleting "cold-rolled steel" from the claimed subject matter. Mittal and other steelmakers are entitled to rely upon the claim language Arcelor selected in defining its invention.

Arcelor cannot now object to defending against a summary judgment motion after failing to make a reasonable pre-filing inquiry into the legitimacy of its suspicions Unlike Arcelor, which sought no information from Mittal about any Mittal steel prior to bringing suit, Mittal's counsel sought the basis for the suit prior to bringing this motion. Arcelor should have at least *attempted* to satisfy itself that at least one claim of the '805 patent is infringed. That requires that the claims be construed and then compared to the product. It is clear from the foregoing that, had Arcelor examined the Mittal product, it would have concluded that no claim was infringed. Mittal respectfully submits that there are no disputes of material fact and that summary judgment of non-infringement should be granted.

17

## CONCLUSION

In light of the above, Defendant Mittal Steel USA Inc. respectfully requests that its motion be **GRANTED** and the complaint be dismissed and that it be awarded such other and further relief as the Court deems appropriate. Alternatively, Mittal submits that there are no genuine disputes of fact material to the issue of infringement, and that summary judgment of non-infringement should be entered.

                                          POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Joseph W. Berenato, III                   By: _____
Berenato, White & Stavish, LLC                 Philip A. Rovner (#3215)
6550 Rock Spring Drive, Ste. 240               Hercules Plaza
Bethesda, Maryland 20817                       P.O. Box 951
(301) 896-0600                                 Wilmington, DE 19899
                                               (302) 984-6000
Kenneth B. Herman                              E-mail: provner@potteranderson.com
Ropes & Gray
1251 Avenue of the Americas                    Attorneys for Defendant
New York, New York 10020-1105                  Mittal Steel USA Inc.
(212) 596-9020

Dated: May 23, 2006
733572

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on May 23, 2006, the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following; that the document was served on the following counsel as indicated; and that the document is available for viewing and downloading from CM/ECF.

### BY HAND DELIVERY

Jack B. Blumenfeld, Esq.
Karen Jacobs Louden, Esq.
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P. O. Box 1347
Wilmington, DE  19899
jblumenfeld@mnat.com
klouden@mnat.com

Philip A. Rovner  (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P. O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com

# EXHIBIT A

LEXSEE 1994 U.S. APP. LEXIS 4886

**MET-COIL SYSTEMS CORPORATION, Plaintiff-Appellee, v. ENGEL INDUSTRIES, INC., Defendant-Appellant.**

93-1416

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

*1994 U.S. App. LEXIS 4886*

**March 16, 1994, Decided**

**NOTICE:** [*1] RULE 47.8. OPINIONS AND ORDERS DESIGNATED AS UNPUBLISHED SHALL NOT BE EMPLOYED AS PRECEDENT BY THIS COURT, AND MAY NOT BE CITED BY COUNSEL, EXCEPT IN SUPPORT OF A CLAIM OF RES JUDICATA, COLLATERAL ESTOPPEL, OR LAW OF THE CASE. ANY PERSON MAY REQUEST THAT AN UNPUBLISHED OPINION OR ORDER BE REPREPARED AND REISSUED FOR PUBLICATION, CITING REASONS THEREFOR. SUCH REQUEST WILL BE GRANTED OR DENIED BY THE PANEL THAT RENDERED THE DECISION.

**SUBSEQUENT HISTORY:**

Reported in Table Case Format at: *22 F.3d 1104, 1994 U.S. App. LEXIS 17923.*

**DISPOSITION:** Denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant appealed an order of the United States District Court that denied its Fed. R. Civ. P. 59(e) motion to alter or amend an order that plaintiff properly dismissed its complaint and that defendant was not entitled to sanctions.

**OVERVIEW:** Plaintiff claimed defendant breached its license agreement by failing to mark the patent number on machines and alleged that the license was terminated by notice of the breach. Defendant moved to dismiss for failure to state a cause of action because the complaint did not allege compliance with the conditions precedent to the cancellation of the license agreement that required a 60-day written notice and opportunity to cure before termination. Defendant filed a motion for sanctions and a motion to dismiss the amended complaint. Plaintiff filed a notice of voluntary dismissal under Fed. R. Civ. P.

41(a)(1). Defendant filed a request to withhold the dismissal pending ruling on the sanction. The request was denied. Defendant filed a motion under Fed. R. Civ. P. 59(e) to alter or amend the order. The district court denied the motion. Defendant argued that the motion to dismiss was transferred to a motion for summary judgment under Fed. R. Civ. P. 12(b). The court of appeals held the motion for sanctions and supporting memoranda were not the type of materials which constituted matters outside the pleading as contemplated by rule 12(b) to convert motion into one under Fed. R. Civ. P. 56.

**OUTCOME:** The court affirmed the district court's dismissal and its denial of sanctions.

**LexisNexis(R) Headnotes**

*Civil Procedure > Dismissals > General Overview*
*Civil Procedure > Summary Judgment > Motions for Summary Judgment > General Overview*
*Civil Procedure > Summary Judgment > Notices*
[HN1] Fed. R. Civ. P. 41(a)(1) provides that an action may be dismissed by the plaintiff without order of court by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment.

*Civil Procedure > Dismissals > Voluntary Dismissals > Court Orders > Motions*
*Civil Procedure > Dismissals > Voluntary Dismissals > Notices > General Overview*
*Civil Procedure > Summary Judgment > Notices*
[HN2] Fed. R. Civ. P. 12(b) provides that if, on a motion asserting the defense to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not

excluded by the court, the motion shall be treated as one for summary judgment.

*Civil Procedure > Appeals > Standards of Review > Abuse of Discretion*

[HN3] An appellate court should apply an abuse-of-discretion standard in reviewing all aspects of a district court's Rule 11 determination.

**JUDGES:** Before NEWMAN, MICHEL and PLAGER, Circuit Judges.

**OPINIONBY:** MICHEL.

**OPINION:** MICHEL, Circuit Judge.

DECISION

Plaintiff-appellee, Met-Coil Systems Corp. ("Met-Coil"), licensed its patented technology for making integrally flanged rectangular heating and cooling ducts to defendant-appellant, Engel Industries, Inc. ("Engel"). In Spring of 1989, Met-Coil claimed Engel breached the license by failing to mark Met-Coil's patent number on Engel's machines as required by the license agreement. As a result, Met-Coil filed the present suit, alleging that the license to Engel had been terminated by notice of the breach.

Engel moved to dismiss for failure to state a cause of action because the complaint did not "allege compliance with the conditions precedent to the cancellation [*2] of [the] license agreement." In particular, the license agreement explicitly required that Engel be given a 60-day written notice and opportunity to cure before any termination. Met-Coil, however, provided no such notice. Instead, Met-Coil declared that the license agreement terminated just two days after Met-Coil learned of the alleged breach. Also, Engel cured the problem within the 60-day period by adding the patent number to its product. Along with its motion to dismiss, Engel filed a motion for sanctions under Rule 11.

While Engel's motions were pending, Met-Coil filed its amended complaint. Count I of the amended complaint sought rescission of the license agreement between Met-Coil and Engel. In the alternative, count II sought termination of the agreement because of breach on the part of Engel. Count III alleged patent infringement by Engel from the very beginning, in the event of rescission, or from the period of termination, in the alternative.

Again, Engel filed neither an answer nor a motion for summary judgment with respect to the amended complaint. Instead, Engel filed a motion to dismiss the amended complaint.

While Engel's motion to dismiss was still pending, Met-Coil [*3] filed a notice of voluntary dismissal under Federal Rule of Civil Procedure 41(a)(1). [HN1] Rule 41(a)(1) provides that

> an action may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment . . . .

Met-Coil's notice pointed out that Engel had filed neither an answer nor a motion for summary judgment.

Engel responded by filing a request to withhold approval of the notice of dismissal pending ruling on its sanctions motion, and argued that dismissal should be with prejudice. Engel also filed a Rule 41(b) motion seeking involuntary dismissal on the ground that Met-Coil failed to prosecute its rescission cause of action.

The district court denied Engel's motions in an order dated November 24, 1992, holding that: (1) Met-Coil properly dismissed its complaint without prejudice under Rule 41(a)(1); and (2) Engel was not entitled to sanctions under Rule 11. Met-Coil Sys. Corp. v. Engel Indus., Inc., No. 91-2198C(8) (Nov. 24, 1992).

Engel responded by filing a motion under Rule 59(e), to alter or amend the November 24, 1992, order. Engel contended that Met-Coil [*4] was not entitled to a dismissal without prejudice as Engel's motion for sanctions "transformed" his motion to dismiss into a motion for summary judgment, citing *Kurkowski v. Volcker, 819 F.2d 201 (8th Cir. 1987)*.

The district court denied Engel's Rule 59(e) motion, and Engel appeals the denial. We affirm.

DISCUSSION

I.

Met-Coil contends that the district court did not err in upholding Met-Coil's dismissal without prejudice of its amended complaint under Rule 41(a)(1) because Met-Coil filed its notice of voluntary dismissal before Engel submitted an answer or motion for summary judgment.

Engel responds that its motion to dismiss, which was filed before Met-Coil's notice of voluntary dismissal, was transformed into a motion for summary judgment by Rule 12(b). [HN2] Rule 12(b) provides that

> if, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the plead-

ing are presented to and not excluded by the court, the motion shall be treated as one for summary judgment . . .

The question then becomes whether Engel's motion for sanctions, along with its accompanying [*5] affidavit from Met-Coil's counsel, Jerome Gross, constitute "matters outside the pleading" which warrant treating the Rule 12(b)(6) motion to dismiss as a Rule 56 summary judgment motion.

Engel answers in the affirmative, citing *Kurkowski, 819 F.2d at 203 n.7,* for the proposition that a motion for sanctions is one matter outside the pleadings which transforms a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment.

We disagree. Engel's motion for sanctions and supporting memoranda are not the type of materials which constitute "matters outside the pleading" as contemplated by Rule 12(b) to convert a Rule 12(b)(6) motion into a motion under Rule 56. According to *Sardo v. McGrath, 90 U.S. App. D.C. 195, 196 F.2d 20, 22 (D.C. Cir. 1952),* the extra-pleading matters contemplated by Rule 12(b) "must be either depositions, admissions or affidavits." In the present case, Engel presented no depositions or admissions in support of its motion to dismiss, and the affidavit from outside counsel, Jerome Gross, did not support the motion to dismiss. Instead, the Gross affidavit related solely to Engel's motion for sanctions, and the court [*6] in *Nix v. Fulton Lodge No. 2 of Int. Ass'n of Mach. & Aero. W., 452 F.2d 794, 797 (5th Cir. 1972),* explicitly held that, where no affidavits or "other matters outside the pleadings" pertaining to the Rule 12(b)(6) motion to dismiss were submitted, there can be no conversion of the motion to dismiss into a summary judgment motion under Rule 12(b).

Moreover, Engel's reading of Kurkowski is overly broad. A careful reading of Kurkowski reveals that it was not the motion for sanctions itself which converted the motion to dismiss to a motion for summary judgment, but rather the evidence produced at a hearing that related to the motion to dismiss.

Accordingly, we affirm the district court's November 24, 1992, dismissal without prejudice pursuant to Rule 41(a)(1).

B.

Engel also appeals the district court's denial of Rule 11 sanctions. Engel based its motion for sanctions on three arguments: (1) Met-Coil violated Rule 11 because the signer of Met-Coil's pleadings is "merely a local facilitator for Met-Coil who did not possess knowledge that any of the pleadings were well grounded in fact and

warranted by law"; (2) Met-Coil's pleadings "have been interposed [*7] for an improper purpose"; and (3) Met-Coil's pleadings "contain procedural errors and contradict each other." Met-Coil, slip op. at 29.

The Supreme Court clearly articulated the standard of appellate review for Rule 11 decisions in *Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 400-05, 110 L. Ed.2d 359, 110 S. Ct. 2447 (1990):*

> No dispute exists that the appellate court should review the district court's selection of a sanction under a deferential standard
>
> * * *
>
> [HN3]
> An appellate court should apply an abuse-of-discretion standard in reviewing all aspects of a District Court's Rule 11 determination.

Given this deferential standard of review, we cannot conclude that the district court abused its discretion. Although the district court ultimately denied Engel's motion for sanctions, it considered each of Engel's various assertions. The district court found and explicitly stated in its opinion that K. Steven Jones, who signed the complaint and served as local counsel on behalf of Clarence J. Fleming and Met-Coil, swore in an affidavit that he "discussed the pleadings by telephone or in person with Mr. Fleming." Met-Coil, slip op. at 29. Thus, we cannot say that the district court [*8] judge abused his discretion in concluding that Jones read the pleading and to the best of his knowledge, information, and belief formed after reasonable inquiry determined that it was well grounded in fact and warranted by existing law or a good faith argument for the extension, modification or reversal thereof.

Moreover, the district court specifically found that Met-Coil did not file the instant action for an improper purpose, and held that the procedural errors contained in the pleadings do not warrant sanctions under Rule 11. Because we find no abuse of discretion, we affirm the district court's denial of sanctions.

III.

Finally, we deny Met-Coil's cross-motion for sanctions against Engel pursuant to Rule 38 of the Federal Rules of Appellate Procedure. Although Engel did not ultimately prevail on his appeal, the appeal was by no means frivolous. Engel did raise some potentially meritorious arguments concerning the possible impropriety of the district court's voluntary dismissal without prejudice. Moreover, as to Engel's appeal of the district court's denial of sanctions, we considered it persuasive, though not dispositive, that a copy of the license agreement, which

1994 U.S. App. LEXIS 4886, *

required Met-Coil [*9] to give Engel a 60 day cure period before termination, was attached to the complaint which alleged termination without affording the 60 days. Accordingly, Met-Coil's request for sanctions is denied.