IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ARCELOR FRANCE and             )
ARCELOR ATLANTIQUE ET LORRAINE,  )
                                     )
            Plaintiffs,         )
                                     )   C. A No. 06-307 (SLR)
           v.             )
                                   )
MITTAL STEEL USA INC.,         )
                                   )
            Defendant.     )

**PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS THE COMPLAINT OR, ALTERNATIVELY, FOR
SUMMARY JUDGMENT OF NON-INFRINGEMENT**

                                MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                                Jack B. Blumenfeld (#1014)
                                Karen Jacobs Louden (#2881)
                                1201 N. Market Street
                                P.O. Box 1347
                                Wilmington, DE  19899-1347
                                (302) 658-9200
                                Attorneys for Plaintiffs

OF COUNSEL:

Jean-Paul Lavalleye
Richard D. Kelly
Stephen G. Baxter
Steven P. Weihrouch
OBLON, SPIVAK, MCCLELLAND,
MAIER & NEUSTADT, P.C.
1940 Duke Street
Alexandria, VA  22314
(703) 413-3000

June 7, 2006

TABLE OF CONTENTS

Page(s)

NATURE AND STAGE OF PROCEEDINGS ............................................................ 1

SUMMARY OF ARGUMENT ................................................................................... 1

STATEMENT OF FACTS

    A.  The Parties ................................................................................................ 3

    B.  The Technology at Issue ........................................................................... 3

    C.  The '805 Patent

        1.  The Claims of the '805 Patent .......................................................... 4

        2.  The Specification of the '805 Patent ................................................. 5

        3.  The Prosecution History of the '805 Patent ...................................... 6

ARGUMENT

    A.  MITTAL'S RULE 12 (b) (6) MOTION SHOULD BE DENIED ............... 9

    B.  MITTAL'S MOTION FOR SUMMARY JUDGMENT OF
        NON-INFRINGEMENT SHOULD BE DENIED .................................... 13

        1.  Summary Judgment Standard .......................................................... 14

        2.  Patent Infringement ........................................................................ 15

        3.  This Court Should Not Engage in Piecemeal Claim
           Interpretation .................................................................................. 16

        4.  Claim Interpretation ....................................................................... 17

        5.  There Are Genuinely Disputed Material Facts About
           Mittal's Product Which Preclude The Grant of
           Summary Judgment ........................................................................ 20

        6.  Arcelor Should Be Permitted to Take Discovery
           Pursuant to Fed. R. Civ. P. 56 (f) ................................................... 21

CONCLUSION ....................................................................................................... 23

## TABLE OF CITATIONS

<u>Cases</u>

*3M Innovative Props. Co. v. Avery Dennison Corp.*,
    350 F.3d 1365 (Fed. Cir. 2003)...................................................................18

*Adco Products, Inc. v. Carlisle Syntec, Inc.*,
    110 F. Supp. 2d 276 (D. Del. 2000)…...........................................................14

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986).....................................................................................14

*Baylis v. Taylor*,
    2006 U.S. Dist. LEXIS 7307 (D. Del. 2006) ...............................................12

*Bell Comm. Research, Inc. v. Vitalink Comm. Corp.*,
    55 F.3d 615 (Fed. Cir.)................................................................................15

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*,
    116 F.3d 1364 (11th Cir. 1997) .....................................................................9

*Catanzaro v. Mosco Corp.*,
    408 F. Supp. 862 (D. Del. 1976).................................................................22

*CCS Fitness, Inc. v. Brunswick Corp.*,
    288 F.3d 1359 (Fed. Cir. 2002)...................................................................15

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986).....................................................................................21

*Colburn v. Upper Darby Twp.*,
    838 F.2d 663 (3d Cir. 1988).........................................................................12

*Conley v. Gibson*,
    355 U.S. 41 (1957)....................................................................................1, 9

*Digital Biometrics, Inc. v. Identix, Inc.*,
    149 F.3d 1335 (Fed. Cir. 1998)...................................................................15

*Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*,
    93 F.3d 1572 (Fed. Cir. 1996)......................................................................15

*Enzo Life Sci., Inc. v. Digene Corp.*,
    295 F. Supp. 2d 424 (D. Del. 2003).............................................................12

*Fuji Mach. Mfg. Co., Ltd. v. Hover-Davis, Inc.*,
    936 F. Supp 93 (W.D.N.Y. 1996) ........................................................ 11

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
    535 U.S. 722 (2002) .......................................................................... 19

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997) ............................................................ 12

*In re Johnston*,
    77 U.S.P.Q.2d 1788 (Fed. Cir. 2006) ................................................ 18

*Int'l Raw Materials, Ltd. v. Stauffer Chem. Co.*,
    898 F.2d 946 (3d Cir. 1990) .............................................................. 22

*Kachmar v. Sungard Data Sys., Inc.*,
    109 F.3d 173 (3d Cir. 1997) .............................................................. 22

*Kost v. Kozakiewicz*,
    1 F.3d 176 (3d Cir. 1993) ............................................................ 12, 13

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995) ............................................................. 16

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) .......................................................................... 14

*Pareto v. F.D.I.C.*,
    139 F.3d 696 (9th Cir. 1998) ....................................................... 12, 13

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) .................................................... 15, 19

*Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.*,
    203 F.3d 790 (Fed. Cir. 2000) ................................................. 9, 10, 11

*Sames v. Gable*,
    732 F.2d 49 (3d Cir. 1984) ................................................................ 22

*Scheetz v. The Morning Call, Inc.*,
    747 F. Supp. 1515 (E.D. Pa. 1990) ................................................... 22

*Sunrace Roots Enterprise. Co., Ltd. v. SRAM Corp.*,
    336 F.3d 1298 (Fed. Cir. 2003) ......................................................... 15

*Symbol Techs., Inc. v. Hand Held Prods., Inc.*,
    2003 U.S. Dist. LEXIS 21002 (D. Del. 2003) ............................................ 9, 10, 11

*The Upjohn Co. v. Syntro Corp.*,
    1990 U.S. Dist. LEXIS 11512  (D. Del. 1990) ...................................................... 11

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996)................................................................................ 15

## Statutes And Other Authorities

Fed. R. Civ. P. 8 (a) ....................................................................................................... 1, 9

Fed. R. Civ. P. 12 (b) ....................................................................................................... 12

Fed. R. Civ. P. 56 (e) ....................................................................................................... 14

Fed. R. Civ. P. 56 (f) ................................................................................................... 2, 21

Fed. R. Civ. P. 84 ............................................................................................................ 10

37 C.F.R. §1.52(d)(1)......................................................................................................... 7

11 James W. Moore et al., *Moore's Federal Practice* ¶ 56.10 [1]
    (3d ed. 1997)............................................................................................................21, 22

## NATURE AND STAGE OF PROCEEDINGS

Plaintiffs, Arcelor France and Arcelor Atlantique et Lorraine (collectively "Arcelor"), submit this brief in opposition to Defendant Mittal Steel USA, Inc.'s ("Mittal's") Motion to Dismiss the Complaint or, Alternatively, for Summary Judgment of Non-infringement. (D.I. 7).

## SUMMARY OF ARGUMENT

Mittal's motion to dismiss should be denied because Arcelor's Complaint fully complies with the notice pleading requirements of Rule 8 of the Federal Rules of Civil Procedure and Mittal has not established "beyond doubt" that Arcelor can prove no set of facts in support of its claim. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Indeed, both the Complaint and the Amended Complaint[1] contain "(1) a short and plain statement of the grounds upon which the court's jurisdiction depends, . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks." Fed. R. Civ. P. 8 (a). That is all a plaintiff is required to plead to state a cause of action for patent infringement. Indeed, the Complaint and Amended Complaint provide more specificity than that set forth in Form 16 (Complaint for Infringement of Patent) of the Federal Rules of Civil Procedure.

Mittal's alternative motion for summary judgment of non-infringement also should be denied because it essentially seeks a ruling on contested issues of claim construction and infringement before any discovery has taken place in contravention of this Court's standard procedure of deciding these issues after the close of fact and expert

---

[1]       As Mittal notes in its brief, Arcelor filed an Amended Complaint on May 15, 2006 adding Arcelor Atlantique et Lorraine as a plaintiff. (D.I. 8 at 1, n.1). In its brief, however, Mittal seeks dismissal of Arcelor's "Complaint." (*Id.* at 1, 10, 18). Mittal's motion is not expressly directed toward the Amended Complaint.

discovery.    Contrary to Mittal's contention, the claim term "hot-rolled steel sheet" in United States Patent No. 6,296,805 (the "'805 patent") – interpreted from the perspective of one skilled in the art in light of the intrinsic evidence – includes hot-rolled steel sheets that are subsequently cold-rolled and coated.  The fact that Mittal's hot-rolled steel sheet purportedly is later cold-rolled does not preclude a finding of infringement.

Significantly, Mittal cannot and does not deny that if the "hot-rolled steel sheet" limitation is construed to include hot-rolled sheets that are subsequently cold-rolled, then its products literally infringe the '805 patent.[2]  Given that admission, there can simply be no issue as to the sufficiency of Arcelor's pre-filing investigation. In any event, this action has just begun.  Arcelor should be given an opportunity under Fed. R. Civ. P. 56 (f) to take discovery concerning Mittal's products and processes and how they apply to the patent claims before Arcelor is required to respond to a summary judgment motion, just as in every other patent case in this Court.

---

[2]    Mittal admits, for purposes of its motion, that its accused product has been made "with the cold-rolled steel having an aluminum or aluminum alloy coating, and with the steel's chemical composition falling within the range set forth in claim 1 of the '805 patent."  (D.I. 8 at 5, n.3).  Thus, the only issue is whether the accused products satisfy the "hot-rolled steel sheet" limitation of the patent.

STATEMENT OF FACTS

A.     The Parties

Arcelor is a steel company based in France.  It is the owner of the '805 patent.  Mittal claims to be the world's largest steel company.  (Ex. A).  Arcelor and Mittal are competitors.  As Mittal notes in its brief, Mittal has recently launched a $27 billion hostile bid to take over Arcelor.  (Ex. B; D.I. 8 at 4, n.2).

As Mittal also notes, after this suit was filed, Mittal wrote to counsel for Arcelor asking that Arcelor identify the products alleged to infringe and the basis for the allegations.  (D.I. 9, Ex. 3).  Arcelor responded on May 22, 2006, describing the accused products, and explaining its basis for alleging infringement.  (D.I. 9, Ex. 4).  Mittal did not respond to that letter or request any further information from Arcelor.  Instead, it filed its motion the very next day.

B.     The Technology at Issue

This case involves aluminum-coated boron steel for use in automotive applications.  Steel is made from an iron-containing liquid, which is solidified by either continuous or batch casting.  The solid shapes are rolled at high temperature ("hot-rolling") for two purposes:  1) to improve the properties as compared to the as-cast structure and 2) to change the shape of the semi-finished product.  (Declaration of Robert H. Wagoner, PhD ("Wagoner Decl.") ¶ 10).  For flat steel products (sheet, strip, plate, and the like), the processing may end either with a final hot-rolling step, or the products may continue to be rolled subsequently near room temperature ("cold-rolling").  (*Id.* at ¶ 11).  All flat steel products have been hot-rolled; some of them have been additionally cold-rolled.  (*Id.* at ¶ 12).  Cold-rolling following hot-rolling is typically performed for

the purposes of obtaining a better surface finish and of attaining a smaller thickness. This additional finishing step involves extra cost. (*Id.*). All flat steel products that have been cold-rolled have previously been hot-rolled. (*Id.* at ¶ 13). Flat-rolled steel is often further characterized in the industry as sheet, strip or plate. (*Id.* at ¶ 14). These distinctions refer to details of width and thickness, although such terms are often used interchangeably and flexibly. (*Id.*).

    C.    <u>The '805 Patent</u>

    1.    <u>The Claims of the '805 Patent</u>

Claim 1 is the only independent claim of the '805 patent. It provides (emphasis added) (D.I. 6, Ex. 1):

1. *A hot-rolled coated steel sheet comprising a hot-rolled steel sheet* coated with an aluminum or aluminum alloy coating, wherein the steel in the sheet comprises the following composition by weight:

0.15%<carbon<0.5%

0.5%<manganese<3%

0.1%<silicon<0.5%

0.01%<chromium<1%

titanium<0.2%

aluminum<0.1%

phosphorus<0.1%

sulfur<0.05%

0.0005%<boron<0.08%, the remainder being iron and impurities inherent in processing, and the steel sheet has a very high mechanical resistance after thermal treatment and the aluminum or aluminum alloy coating provides a high resistance to corrosion of the steel sheet.

As explained by Professor Robert H. Wagoner, the George R. Smith Chair in the Department of Materials Science and Engineering at The Ohio State University, one skilled in the art would understand that the "hot-rolled steel sheet" limitation of claim 1, as interpreted in light of the intrinsic evidence, includes hot-rolled steel sheets that are subsequently cold-rolled. (Wagoner Decl. at ¶ 17).

### 2.    The Specification of the '805 Patent

The '805 patent specification confirms that the claim term "hot-rolled steel sheet" includes those hot-rolled steel sheets that have been subsequently cold-rolled. For example, the specification explicitly discloses that "[t]he subject invention is a hot-rolled steel sheet, which then can be cold-rolled, coated, . . . ." (Col. 1, ll. 47-48). It further discloses that: "The sheet according to the invention which derives, by reason of its processing, from a hot-rolling mill, possibly may be cold-rolled again." (Col. 2, ll. 37-39). Other relevant references in the specification include (emphasis added):

> The invention relates to *a coated, hot- and cold-rolled steel sheet* comprising a very high resistance after thermal treatment. (Col. 1, ll. 6-8).

> *At the time of continuous coating of flat hot- and cold-rolled products*, preliminary annealing and cooling preceding or following the zinc- or aluminum-based coating operation, are used only to bring the sheet to a temperature close to that of the bath or to restore the mechanical properties of the sheet degraded at the time of cold-rolling. (Col. 1, ll. 26-31).

> *The purpose of the invention is to produce a hot- or cold-rolled steel sheet* of a desired thickness, coated, and affording extensive shaping possibilities and which, after thermal treatment performed on the finished casting, makes it possible to obtain a mechanical resistance in excess of 1000 MPa, a substantial resistance to shocks, fatigue, abrasion and wear, while retaining a good resistance to

corrosion as well as a good capacity for painting and gluing.  (Col. 1, ll. 37-44).

*The  invention also concerns the use of the hot-rolled steel sheet which then can be cold-rolled and coated*, for structural and/or anti-intrusion or substructure castings for a land motor vehicle, such as, for example, a bumper bar, a door reinforcement, a wheel spoke.  (Col. 2, ll. 30-34).

*The sheet according to the invention which derives, by reason of its processing, from a hot-rolling mill, possibly may be cold-rerolled again depending on the final thickness desired.*  It then is coated with an aluminum-based coating, for example by dipping in a bath containing, in addition, from 8% to 11% silicon, from 2% to 4% iron, the sheet having a high mechanical resistance after thermal treatment and a high resistance to corrosion, as well as a good capacity for painting and gluing.  ('805 patent, Col. 2, ll. 37-45)

As Professor Wagoner explains in his declaration, one skilled in the art would understand from these intrinsic references that the claim term "hot-rolled steel sheet" means any steel sheet that has been hot-rolled, including those that have been subsequently cold-rolled.  (Wagoner Decl. at ¶¶ 16, 19).

### 3.     The Prosecution History of the '805 Patent

The prosecution history of the '805 patent confirms that the invention includes hot-rolled sheets that are subsequently cold-rolled.   Contrary to Mittal's assertion, Arcelor did not disclaim such products during prosecution.

Claim 1, as originally filed, read (emphasis added):

1.  Hot-rolled steel sheet *which then may be cold-rolled*, coated, the steel in the sheet having the following composition by weight:

0.15%<carbon<0.5%

0.5%<manganese<3%

0.1%<silicon<0.5%

0.01%<chromium<1%

titanium<0.2%

aluminum<0.1%

phosphorus<0.1%

sulfur<0.05%

0.0005%<boron<0.08%, the remainder being iron and impurities inherent in processing, the sheet ensuring a very high mechanical resistance after thermal treatment and the aluminum-based coating ensuring a high resistance to corrosion.

(D.I. 9, Ex. 1 (emphasis added)).[3]  Thus, original claim 1 made it clear to one skilled in the art that the claim term "hot-rolled steel sheet" as used in the '805 patent includes any steel sheet that has been hot-rolled, including those that subsequently have been cold-rolled.  (Wagoner Decl. ¶ 21).  Mittal agrees with this interpretation.  (D.I. 8 at 15).

Mittal's argument is that "Plaintiffs specifically disclaimed during prosecution that their patent covered cold-rolled steel, . . ." (D.I. 8 at 1).  That argument is wrong.  Arcelor never disclaimed cold-rolled steel products.  The examiner rejected original claim 1 on the ground that "the phrase 'which then maybe [sic] be cold-rolled, coated' is indefinite *since it is unclear if the steel sheet is coated or if it is optionally coated*." (D.I. 9, Ex. 1, 1/19/01 Office Action, p. 3) (emphasis added).  The examiner then went on to state that "[f]or examination purposes, the claim has been treated as meaning [a] coated, hot-rolled steel sheet *which may be optionally cold-rolled*."  (*Id.*) (emphasis added).  This rejection did not relate to the definition of the terms "hot-rolled"

---

[3]    Applicants originally filed the application with the PTO in French.  Pursuant to 37 C.F.R. § 1.52 (d) (1), applicants submitted a verified English translation of the application as originally filed on July 9, 1999 with a statement that the translation is accurate.  The certified English translation was the version examined by the PTO.

or "cold-rolled;" it only related to whether coating was optional or required. Moreover, in restating the claim to indicate that she was correctly treating the coating step as being required, the examiner confirmed that a person of skill in the art would understand that the claim term "hot-rolled steel sheet" does not exclude cold-rolled sheets when she defined the claim as covering "[a] coated, hot-rolled steel sheet which may be optionally cold-rolled." (*Id*.; Wagoner Decl. ¶ 22).

In response, applicants amended original claim 1 to clarify that the coating was not optional. (D.I. 9, Ex. 1, 5/21/01 Amendment). As explained in Professor Wagoner's declaration, because the examiner's rejection was related to the question of whether the *coating* was required or optional, and not to the scope of the term "hot-rolled steel sheet," there is no reason to interpret the amendment to claim 1 as changing the scope of the term "hot-rolled steel sheet." (Wagoner Decl. ¶ 23). Thus, one skilled in the art would not interpret the amendment to claim 1 as narrowing the scope of this term. In fact, one skilled in the art would understand the scope of amended claim 1 to be the same as original claim 1 with regard to the "hot-rolled steel sheet" limitation. (*Id.*).

The claim term "hot-rolled steel sheet" is therefore generic in light of the specification and prosecution history of the '805 patent. Original claim 1, the patent specification, and the prosecution history placed the public on notice that the invention of the '805 patent encompasses not only steel sheets that are hot-rolled and coated, but also steel sheets which have been subjected to additional processing steps prior to coating, particularly cold-rolling. Arcelor deleted the reference to the additional optional feature to clarify that the *coating* is not optional – consistent with the examiner's claim interpretation in the immediately preceding Office Action.

<u>ARGUMENT</u>

A.     MITTAL'S RULE 12 (b) (6) MOTION SHOULD
       BE DENIED

Mittal's motion to dismiss Arcelor's complaint should be denied.  First, Arcelor's complaint plainly meets the notice pleading requirements of Fed. R. Civ. P. 8. Second, Mittal has not proven (as it must on such a motion) "beyond doubt that the plaintiff can prove no set of facts in support of [its] claim." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  Moreover, "the dismissal standard is extraordinary, and not one to be taken lightly." *Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.,* 203 F.3d 790, 793-94 (Fed. Cir. 2000).  "Dismissal of a claim on the basis of barebone pleadings is a precarious disposition with a high mortality rate." *Id.* (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1368 (11th Cir. 1997)).

It is well-established that "the liberal pleading requirements [of the Federal Rules of Civil Procedure] are designed to put the parties on notice generally as to the nature of the cause of action." *Symbol Techs., Inc. v. Hand Held Prods., Inc.,* 2003 U.S. Dist. LEXIS 21002, at *8 (D. Del. 2003) (citing *Conley*, 335 U.S. at 47).  Fed. R. Civ. P. 8 (a) sets forth three items that are required to satisfy these requirements:  "(1) a short and plain statement of the grounds upon which the court's jurisdiction depends, . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks."[4]

---

[4]     Mittal does not even cite Fed. R. Civ. P. 8 (a) in its brief, much less explain how Arcelor's Complaint does not satisfy its requirements.

Form 16 (Complaint for Infringement of Patent) of the Federal Rules illustrates the type of notice pleading required in a case for patent infringement. (Ex. C). Like Arcelor's Complaint, Form 16 contains an allegation of jurisdiction, an allegation of ownership, and a general allegation of infringement. As a matter of law, a complaint such as Arcelor's that conforms with Form 16 is clearly adequate to state a claim upon which relief can be granted. Fed. R. Civ. P. 84 ("The forms contained in the Appendix of Forms are sufficient under the rules and are intended to indicate the simplicity and brevity of a statement which the rules contemplate.")

The Federal Circuit held in *Phonometrics* that a complaint that alleged ownership of the asserted patent, named the defendant, cited the patent that was allegedly infringed, described the means by which the alleged infringement occurred, and pointed to the specific sections of the patent law invoked, was sufficient to state a claim for patent infringement. 203 F.3d at 794. It declined to require a plaintiff to include specific allegations about each limitation of the patent. *Id.* The Court held that the "a patentee need only plead facts sufficient to place the alleged infringer on notice" to ensure that the accused infringer has sufficient knowledge of the facts alleged to enable it to answer the complaint and defend itself. *Id.* Similarly, this Court in *Symbol Techs.* declined to require the plaintiff to identify the products alleged to infringe, noting that the plaintiff had not identified "any precedent binding on this court that requires a complaint to identify the basis of an infringement claim with such particularity." 2003 U.S. Dist. LEXIS, at * 8. The Court noted that, "[p]articularly in complex litigation, it is through the discovery process that the parties refine and focus their claims." *Id.* The Court also rejected defendant's attempt, as here, to "bootstrap Fed. R. Civ. P. 11 requirements into

Rule 8, without actually alleging that [plaintiff's] complaint was frivolous." *Id.* at *8, n.1. In the absence of an actual motion to the contrary, the Court assumes compliance with Rule 11. *Id.*

    Arcelor's Complaint and Amended Complaint more than satisfy these notice pleading standards. The Amended Complaint contains an allegation supporting the Court's jurisdiction. (D.I. 6 at ¶¶ 4-5). It also discloses the patent owner, identifies the patent in suit, and explains the activities alleged to constitute infringement – both direct and indirect – of that patent. (*Id.* at ¶¶ 7-9). Specifically, Arcelor identified Mittal's infringing activity – the making, selling, using, or offering to sell of "aluminum coated boron steel products, which infringe one or more claims of the '805 patent." (*Id.,* at ¶ 8).[5] Arcelor also explained that Mittal causes others to make, use, sell, or offer for sale such products in the United States. (*Id.,* at ¶ 9).[6] Arcelor also identified the relief that it seeks. ( *Id.* at 2-3 ("Prayer for Relief")). These allegations are more than sufficient to permit Mittal to answer and prepare a defense. *Phonometrics,* 203 F.3d at 794.[7]

---

[5]   <u>Cf.</u> Form 16, which alleges infringement by the much less specific "electric motors embodying the patented invention."

[6]   Contrary to Mittal's allegation, Arcelor did identify in its Amended Complaint how Mittal is inducing infringement. (D.I. 8 at 7, n.4). At this juncture, Arcelor need not identify a direct infringer but is entitled to prove that through discovery. *See The Upjohn Co. v. Syntro Corp*., 1990 U.S. Dist. LEXIS 11512, at *18 (D. Del. 1990); *Fuji Mach. Mfg. Co., Ltd. v. Hover-Davis, Inc*., 936 F. Supp 93, 95-96 (W.D.N.Y. 1996) (alleging direct infringement by "others" is sufficient to support complaint for indirect infringement).

[7]   Moreover, as noted above, after this lawsuit was filed, Mittal wrote to Arcelor's counsel asking that Arcelor identify the products alleged to infringe and the basis for Arcelor's contentions. (D.I. 9, Ex. 3). Arcelor responded by describing the accused products (because it did not know the name under which the products are sold), and explained its basis for alleging infringement. (D.I. 9, Ex. 4). Mittal

Mittal's real basis for its motion appears to be its oft-repeated assertion that it does not make, use, sell, or offer for sale any products covered by the patent. (D.I. 8 at 1-5, 7, 10).[8]  In other words, Mittal simply denies that it infringes Arcelor's patent. That, however, is a factual assertion, and all such assertions are to be construed in *Arcelor's* favor on a motion to dismiss.  *See Colburn v. Upper Darby Twp.,* 838 F.2d 663, 665-66 (3d Cir. 1988) (denying motion to dismiss); *accord In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1420 (3d Cir. 1997) (denying motion to dismiss); *Enzo Life Sci., Inc. v. Digene Corp.,* 295 F. Supp. 2d 424, 426-27 (D. Del. 2003) (denying motion to dismiss).  Indeed, when the claims are construed in Arcelor's favor to include hot-rolled sheets that are subsequently cold-rolled, there is no dispute that Mittal infringes, as Mittal admits for purposes of this motion that its products meet all other limitations of the '805 claim terms.

Mittal cites cases (each of which *denied* a motion to dismiss) for the proposition that "[l]egal conclusions couched as factual allegations are not given a presumption of truthfulness . . . ."  (D.I. 8 at 6).  Mittal, however, does not identify any such legal conclusions in Arcelor's Complaint.  The other cases Mittal cites – *Pareto v. F.D.I.C.,* 139 F.3d 696 (9th Cir. 1998), and *Kost v. Kozakiewicz,* 1 F.3d 176 (3d Cir.

---

does not contend that it has not been able to identify the accused products.  Nor did it respond to Arcelor's letter or request any further information.

[8]    Mittal also purports to offer two declarations with attached exhibits in support of its position.  It is well-established, however, that such extrinsic evidence cannot be considered in deciding a motion to dismiss.  *See* Fed. R. Civ. P. 12 (b); *accord Baylis v. Taylor,* 2006 U.S. Dist. LEXIS 7307, at *7 (D. Del. 2006) ("In support of his position, [defendant] refers to documents outside the pleadings. The court, however, does not consider those documents and looks only to the complaint."); *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1424-25 (3d Cir. 1997) (denying motion to dismiss, noting that "since the district court was ruling on a motion to dismiss, it was not permitted to go beyond the facts alleged in the Complaint and the documents on which the claims made therein were based.").

1993) – also do not support Mittal's position.  In *Pareto*, the plaintiff did not allege injury to a right he possessed.  In *Kost*, the Court actually *reversed* the dismissal of several claims, affirming the dismissal of those for which the statute of limitations had expired or were otherwise barred as a matter of law.  Those cases have no application here.  Mittal's Rule 12 (b) (6) motion should be denied.

B.    MITTAL'S    MOTION    FOR    SUMMARY
JUDGMENT    OF    NON-INFRINGEMENT
SHOULD BE DENIED

Mittal's motion for summary judgment of non-infringement also should be denied.  Mittal is attempting to obtain a ruling on contested claim construction and infringement issues before there has been any discovery, in contravention of the Court's standard procedure of deciding these issues after the close of fact and expert discovery as set forth in paragraphs 6 and 7 of its standard Scheduling Order for patent cases.  (Ex. D). Mittal cites no reason why the Court should deviate from its procedures here.[9]  By raising only a single claim construction issue at this time, Mittal is asking this Court to engage in piecemeal claim construction, which is an inefficient use of the Court's resources.  This Court's standard scheduling order is designed to avoid such inefficiencies, and there is no reason to adopt Mittal's procedure in this case.

In any event, as explained in detail herein, the claims of the '805 patent, when properly construed, cover aluminum-coated steel sheets that have been hot-rolled prior to coating, such as the ones made and sold by Mittal.  The fact that the steel sheet may have also been subsequently cold-rolled after it was hot-rolled (and before it was

---

[9]    One can only surmise that Mittal's request for an immediate disposition of this action without any discovery, and indeed without so much as a conversation with opposing counsel, is related to its attempt to acquire Arcelor.

coated) is irrelevant to the issue of infringement. Mittal's argument, which is based entirely on its proposed construction of the '805 patent, is insufficient and does not warrant the relief Mittal seeks – immediate entry of a judgment in its favor without any discovery.

Mittal's motion also should be denied because there are genuinely disputed material facts about Mittal's product. Specifically, Mittal has only asserted that the steel sheet in its product has been cold rolled. Mittal has not stated, however, whether its steel sheet has been previously hot rolled.

### 1.    Summary Judgment Standard

Rule 56 (c) of the Federal Rules of Civil Procedure provides that a party is entitled to summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In determining whether there are genuine issues of material fact, the court must review all of the evidence and draw all inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). To defeat a motion for summary judgment, the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56 (e). "A material factual dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Adco Prods., Inc. v. Carlisle Syntec, Inc.,* 110 F. Supp. 2d 276, 288 (D. Del. 2000) (citation omitted). Any doubt as to the existence of any issue of material fact requires denial of the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

2.    Patent Infringement

"Patent infringement requires a two-step analysis." *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1365 (Fed. Cir. 2002) (citation omitted). "First, a court must determine as a matter of law the correct scope and meaning of a disputed claim term. . . . Second, the analysis requires a comparison of the properly construed claims to the accused device, to see whether that device contains all the limitations. . . . " *Id.* (citation omitted).

"It is well-settled that, in interpreting an asserted claim, the court should look first to the intrinsic evidence of record, i.e., the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *Vitronics Corp. v. Conceptronic, Inc.* 90 F.3d 1576, 1582 (Fed. Cir. 1996); *see also Phillips v. AWH Corp.,* 415 F.3d 1303, 1318 (Fed. Cir. 2005) (en banc), *cert. denied,* 126 S.Ct. 1332 (2006) (noting that extrinsic evidence such as dictionaries, treatises, and expert testimony may also be useful to claim construction, but is generally less reliable than intrinsic evidence). "Resort to extrinsic evidence is appropriate only when an ambiguity remains after consulting the intrinsic evidence of record." *Vitronics*, 90 F.3d at 1583. Where "the intrinsic evidence resolves any ambiguity about the appropriate construction of" a disputed claim term, "consideration of extrinsic evidence is inappropriate." *Sunrace Roots Enterprise Co., Ltd. v. SRAM Corp.,* 336 F.3d 1298, 1307 (Fed. Cir. 2003) (*citing Digital Biometrics, Inc. v. Identix, Inc.,* 149 F.3d 1335, 1344 (Fed. Cir. 1998)).

Furthermore, "it is legal error to construe a claim by considering it in isolation. A claim must be read in view of the specification of which it is a part." *Bell Commc'ns Research, Inc. v. Vitalink Commc'ns Corp.*, 55 F.3d 615, 621 (Fed. Cir. 1995); *see also Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.,* 93 F.3d 1572, 1578 (Fed. Cir.

1996) (The argument that a claim term "should not be defined with reference to the specification" lacks merit. "The specification unambiguously describes the [claim term.]").

After a court arrives at a claim construction, it must conduct its infringement analysis by comparing the properly construed claim with the allegedly infringing devices. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370 (1996).

3.     This Court Should Not Engage in Piecemeal
       Claim Interpretation

Mittal is asking this Court to resolve only a single claim construction issue at this time. If the issue Mittal now raises is resolved in Arcelor's favor, however, Mittal will undoubtedly raise another, and then another after that. This is precisely the reason this Court eschews piecemeal claim construction. This Court's schedule provides for claim interpretation after the parties have had sufficient discovery to identify all the terms which require interpretation and their impact on the case. The relevant terms can then be argued to the Court. The resources of the Court and the parties will be best utilized by following the schedule set forth in paragraphs 6 and 7 of this Court's standard Scheduling Order for patent cases. (Ex. D).

4.    Claim Interpretation

In any event, the claim interpretation Mittal proposes is wrong.   As explained in detail in the Statement of Facts above, the intrinsic evidence makes clear that the term "hot-rolled steel sheet" of claim 1 of the '805 patent includes hot-rolled steel sheets that have been subsequently cold-rolled.   Specifically, as explained by Professor Wagoner, a person of skill in the art would understand the term "hot-rolled steel sheet," as used in claim 1 of the '805 patent, to mean that the steel sheet has been hot-rolled prior to coating and that this term does not exclude the possibility of subsequent cold-rolling.   (Wagoner Decl. at ¶ 16).   This understanding is confirmed by the claim language itself, as well as the disclosures in the specification of the '805 patent. (*Id.,* at ¶ 18).

Particularly illustrative is the disclosure in the patent that "[t]he subject of the invention is a hot-rolled steel sheet, which then can be cold-rolled, coated, . . . " (D.I. 6, Ex. 1, Col. 1, ll. 47-48; Wagoner Decl. at ¶ 19), and that "[t]he sheet according to the invention which derives, by reason of its processing, from a hot-rolling mill, possibly may be cold-rerolled again . . . ." (D.I. 6, Ex. 1, Col. 2, ll. 37-39; Wagoner Decl. at ¶ 19). A person of skill in the art would therefore understand that the claim term "hot-rolled steel sheet" means any steel sheet that has been hot-rolled, including those have been subsequently cold-rolled.   (Wagoner Decl. at ¶ 19).

Professor Wagoner's interpretation of the claim term "hot-rolled steel sheet" is consistent with the prosecution history of the '805 patent.   Claim 1, as originally filed, contained the phrase "[h]ot-rolled steel sheet which then may be cold-rolled, coated."   (D.I. 9, Ex. 1).   Thus, the language of original claim 1 made it absolutely clear to one skilled in the art that the claim term "hot-rolled steel sheet" as used in the '805

patent includes any steel sheet that has been hot-rolled, including those have been subsequently cold-rolled. Contrary to Mittal's assertion, there was no disclaimer with respect to this claim term. Rather, original claim 1 was rejected because there was an ambiguity as to whether "the steel sheet is *coated* or if it is optionally *coated*." (D.I. 9, Ex. 1, 1/19/01 Office Action, p. 3) (emphasis added). The examiner stated that "[f]or examination purposes, the claim has been treated as meaning [a] coated, hot-rolled steel sheet which may be optionally cold-rolled," thus explicitly acknowledging that the claim term is broad enough to optionally include subsequent cold-rolling. (*Id.).* Because the rejection related only to whether the coating was optional or required, there was no disclaimer as to "hot-rolled sheets." (Wagoner Decl. at ¶ 23). Thus, one skilled in the art would understand the scope of amended claim 1 to be the same as original claim 1 with regard to the claim term "hot-rolled steel sheet." (*Id.*).

Contrary to Mittal's assertion, the fact that the amendment to original claim 1 removed reference to the *optional* step of cold-rolling did not dedicate cold-rolled steel to the public. The removal of an additional step during prosecution does not narrow the scope of a claim (and may in fact broaden it). *See 3M Innovative Props. Co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1372 (Fed. Cir. 2003) (dropping a limitation in response to an indefiniteness rejection to broaden a claim "is entirely permissible"); *In re Johnston*, 77 U.S.P.Q.2d 1788, 1790 (Fed. Cir. 2006) ("Claim . . . contains the additional limitation 'further including that said wall *may be* smooth, corrugated, or profiled with increased dimensional proportions as pipe size is increased.' [T]his additional content did not narrow the scope of the claim because these limitations are stated in the permissive form 'may.' *As a matter of linguistic precision, optional elements do not*

*narrow the claim because they can always be omitted.*") (emphasis added). Just as in *Johnston*, the use of "may be" in original claim 1 signified that the cold rolling feature was optional. The deletion of the optional cold rolling reference did not affect the claim scope with respect to the optional cold rolling feature, as the recitation of such optional features is unnecessary "because they can always be omitted." The deletion of the optional feature clarified that the *coating* was *not* optional – consistent with the claim interpretation the examiner had rendered in the immediately preceding Office Action.[10]

Mittal argues that it cannot infringe because the terms cold-rolled and hot-rolled allegedly are mutually exclusive. (D.I. 8 at 14-15). Mittal's argument, however, is based solely on the declaration of its employee, Dr. Blake Zuidema. Moreover, Dr. Zuidema's declaration provides no assistance in understanding the claim terms. Dr. Zuidema relies exclusively on extrinsic evidence concerning the purported differences between cold-rolled and hot-rolled sheets, ignores that all cold-rolled sheets are also hot-rolled, and does not even discuss the '805 patent claims, specification, or prosecution history. (Wagoner Decl. at ¶ 9). *Phillips,* 415 F.3d at 1321 (court must construe claims in view of the description in the specification and the prosecution history of what the inventors invented).

Professor Wagoner, in contrast, provides a detailed analysis of the specification and prosecution history of the '805 patent. Based on his review of the intrinsic evidence, Professor Wagoner concludes that the term "hot-rolled steel sheet," as

---

[10]    Even if this amendment were viewed as narrowing the scope of the claim, which it should not, there would be no disclaimer of claim scope under *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002). That is because cold-rolled sheets were not only tangential – they were irrelevant – to the purpose of the amendment, which was to clarify that the coating is required. *Id.* at 740-41

used in the '805 patent, includes steel sheets that are also cold-rolled.  Dr. Zuidema's assertions are contrary to the intrinsic evidence and therefore should be disregarded.  At the very least, there are disputed issues that will need to be developed through discovery. It would be premature for the Court to consider dispositive motions at this time.

> 5.    There Are Genuinely Disputed Material Facts About Mittal's Product Which Preclude The Grant of Summary Judgment of No Infringement

Mittal concedes that it sells an aluminum-coated boron steel sheet product. (D.I. 8 at 5, n.3).  It also concedes that the steel in the sheet includes *all* of the elements set forth in claim 1 of the '805 patent, in the range specified by the claim.[11]  (*Id.*). Mittal's only basis in its motion for asserting non-infringement is that its product is allegedly a coated cold-rolled steel sheet.  (D.I. 8 at 10).  Mittal does not state, however, whether its steel sheet product was hot-rolled first before it was cold-rolled.

As explained above, *all* flat steel products that are cold-rolled were previously hot-rolled.  (Wagoner Decl. at ¶ 13).  Mittal has only asserted that its product is cold-rolled; Mittal has not conceded that the steel sheet in its product is previously hot-rolled.  Thus, there is no agreement between the parties on the key question of whether the steel sheet in Mittal's product is hot-rolled at any time.  This disputed material fact about Mittal's product is enough to preclude a grant of summary judgment of no infringement.

---

[11]    It is ironic indeed that Mittal, on one hand, has taken the position in support of its motion to dismiss that it cannot tell what products are at issue; yet on the other hand, in support of its summary judgment motion, Mittal is readily able to identify the relevant product.

6.    Arcelor Should Be Permitted to Take
      Discovery Pursuant to Fed. R. Civ. P. 56(f)

Mittal's motion for summary judgment also should be denied because Arcelor has not yet had the opportunity to take any discovery, including discovery about Mittal's products and processes. Dr. Zuidema states in his declaration that "no Mittal product is a hot-rolled coated steel sheet comprising hot-rolled steel sheet coated with an aluminum or aluminum alloy coating." (D.I. 10 at ¶ 4). Arcelor has no means to test this statement without discovery about the composition of Mittal's products and how they are made, and how those products and processes apply to the claims of the '805 patent. Fed. R. Civ. P. 56 (f) requires that a litigant be permitted discovery before responding to a motion for summary judgment. Rule 56(f) provides:

> Should it appear from the affidavits of a party opposing [a] motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

As the Supreme Court has recognized, the purpose of Rule 56(f) is to safeguard against premature motions for summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986).[12] Rule 56 (f) "is to be liberally construed to prevent injustice to a party faced with a

---

[12]    *Moore's Federal Practice* is instructive:

> Unfortunately, an early summary judgment motion would appear to raise the concerns of five justices of the *Celotex* Court, . . . that summary judgment not be used as a means of routinely harassing or inconveniencing the claimant. An early summary judgment motion could have this effect since it requires the claimant nonmovant to seek a suspension of decision on the motion pursuant to Rule 56(f) in order to obtain affidavits or conduct discovery.

summary judgment motion." *Catanzaro v. Mosco Corp.,* 408 F. Supp. 862, 867 (D. Del. 1976).

"When [Rule 56 (f) applications] are properly made, [they] are granted almost as a matter of course." *Scheetz v. The Morning Call*, *Inc*., 747 F. Supp. 1515, 1518 (E.D. Pa. 1990) (citing *Int'l Raw Materials, Ltd. v. Stauffer Chem. Co.*, 898 F.2d 946 (3d Cir. 1990)).  Applications under Rule 56 (f) should be granted where a motion for summary judgment is premature.  *See, e.g., Kachmar v. Sungard Data Sys., Inc.,* 109 F.3d 173, 183 (3d Cir. 1997) (error to rule on defendant's motion for summary judgment where plaintiff complied with Rule 56 (f) by certifying need to complete discovery, even where there was doubt as to the evidentiary supportability of plaintiff's claim); *Sames v. Gable*, 732 F.2d 49, 51-52 & n.3 (3d Cir. 1984) (error to grant summary judgment while discovery still pending).

Here, as set forth in Arcelor's Rule 56(f) declaration, where this action has just begun, and Arcelor has had no discovery of Mittal's products and processes, summary judgment is certainly premature.  *See Sames*, 732 F.2d at 51-52.

---

11 James W. Moore et al., *Moore's Federal Practice* ¶ 56.10 [1] (3d ed. 1997) (footnote omitted).

## **CONCLUSION**

For all of the foregoing reasons, Mittal's Motion to Dismiss the Complaint

or, Alternatively, for Summary Judgment of Non-Infringement should be denied.


MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Karen Jacobs Louden*

_____

Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
klouden@mnat.com
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
Attorneys for Plaintiffs


OF COUNSEL:

Jean-Paul Lavalleye
Richard D. Kelly
Stephen G. Baxter
Steven P. Weihrouch
OBLON, SPIVAK, MCCLELLAND,
MAIER & NEUSTADT, P.C.
1940 Duke Street
Alexandria, VA  22314
(703) 413-3000

June 7, 2006
523740

<u>**CERTIFICATE OF SERVICE**</u>

I, the undersigned, hereby certify that on June 7, 2006, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Philip A. Rovner
> POTTER ANDERSON & CORROON LLP

and that I caused copies to be served upon the following in the manner indicated:

<u>**BY HAND**</u>

> Philip A. Rovner
> POTTER ANDERSON & CORROON LLP
> 1313 North Market Street
> P.O. Box 951
> Wilmington, DE  19899-0951

> */s/ Karen Jacobs Louden*
> Karen Jacobs Louden
> klouden@mnat.com

EXHIBIT A

**MITTAL**

> Home  > Contact Us  > Language  > Tools    Customer Center Login

Company | Facilities | Products | Investor Relations | News and Press | Communities

Profile
Our Philosophy
Management
History
Structure
Careers
Technology
Offer for Arcelor

## Profile



Mittal Steel is the world's largest and most global steel company, with shipments of 49.2 million tons and revenues of over $28.1 billion in 2005. We own steel-making facilities in 16 countries, spanning four continents. We employ 224,000 people spanning 49 different nationalities. Our shares are listed on the New York and Amsterdam stock exchanges.

Mittal Steel has set the pace for the consolidation and globalisation of the world steel industry. We have taken on a range of acquisitions, many of them formerly public sector-owned companies, and made successes of them. In the process we have spread best practice and modern production techniques throughout our plants. Our capital investment programme is unmatched in the industry.

Our 5000 strong customer base, spanning 150 countries, includes household names in the automotive, engineering and appliance sectors. A force in every segment of the steel market, Mittal Steel produces a broad range of high-quality finished and semi-finished products for the flat and long products markets.

Mittal Steel is among the most efficient steel producers in the world. We encompass all aspects of modern steelmaking, combining both integrated and mini-mill facilities and producing much of the iron ore and coking coal used in our furnaces. We are also among the most advanced steel makers, operating a range of modern technologies. We have pioneered the use of direct reduced iron (DRI) as a raw material source and are now the world's biggest producer of DRI. With two technical research facilities, our product development teams are ready to meet the needs of the most demanding customers.

EXHIBIT B


INTERNATIONAL
**.com**

U.S. Editi

Member Center: Sign In | Register




Watch a tornado
wreak havoc here    CNNmobile

**SEARCH**    ● THE WEB    ○ CNN.com    [                ]    **SEARCH**    Powered by YAHOO! search

- Home Page
- Asia
- Europe
- U.S.
- World
- World Business
- Technology
- Science & Space
- Entertainment
- World Sport
- Travel
- Weather
- Special Reports
- Video
- **ON TV**
- CNN Pipeline
- What's On
- Art of Life
- Business Traveller
- Future Summit
- Principal Voices
- Quest
- Revealed
- Talk Asia
- The Scene

[ Services ▼ ]
[ Languages ▼ ]



# WORLD BUSINESS

## Mittal makes $27 bn Arcelor bid

Thursday, May 18, 2006 Posted: 0744 GMT (1544 HKT)

**BRUSSELS, Belgium (AP) -- Mittal Steel Co. has officially launched its €21 billion (US$27 billion) offer for rival Arcelor SA in Luxembourg, France and Belgium.**

Thursday's offer, which is open for 30 business days, could create a global steel titan if Arcelor shareholders agree to tender their stakes in return for Mittal stock and cash.

The offer will also launch in Spain and the United States when regulators clear the bid.

Arcelor, based in Luxembourg, has so far rejected the bid.

Mittal Chairman and CEO Lakshmi Mittal said in a statement that his company's offer has been well received by markets "through the considerable value created."

"We continue to believe that our offer is a very attractive one, structured to enable Arcelor shareholders to participate in the exciting growth potential of the combined company, whilst also receiving a generous cash element," he said.


Arcelor is the target of a takeover bid by Mittal.

**YOUR E-MAIL ALERTS**

Iron and Steel    ○

Mittal Steel    ○

Arcelor    ○

[ ACTIVATE ] or Create Your Own

Manage Alerts | What Is This?

The combined company would be the only steelmaker to stretch across the world, he said, offering a wide range of steel products and "ample captive" raw materials.

"We are confident shareholders will find great appeal in this model, whose strong growth profile will underpin superior shareholder returns," he said.

*Copyright 2006 The Associated Press. All rights reserved. This material may not be published, broadcast, rewritten, or redistributed.*

---

**Story Tools**

advertisement




⟳📁 SAVE THIS   ⟳✉ E-MAIL THIS
⟳🖨 PRINT THIS   ⟳⭐ MOST POPULAR

**Click Here to try 4 Free Trial Issues of Time!**

## WORLD BUSINESS
Section Page

## TOP STORIES
Home Page   Video   Most Popular

Markets stall on rate fears

Report: CIA flights 'spider's web'

- Oil eases on positive Iran view
- Novartis bids $569M for UK firm
- France Telecom to sell share stake

- Iraq releasing 592 prisoners
- 'Beheading' in Canada terror plan
- U.S. told: Don't be overbearing



CNN U.S.   Languages ▾   CNN TV   E-mail Services   CNN Mobile   CNNAvantGo   CNNtext   Ad Info   Preference

**SEARCH**   ⦿ THE WEB   ○ CNN.com   [            ]   SEARCH   Powered by YAHOO! search

© 2006 Cable News Network LP, LLLP.
A Time Warner Company. All Rights Reserved.
Terms under which this service is provided to you.
Read our privacy guidelines. Contact us.

🔲 External sites open in new window; not endorsed by CNN.com
CNN [Pipeline] Pay service with live and archived video. Learn more
[POD] Download audio news  |  [XML] Add RSS headlines

EXHIBIT C

APPENDIX OF FORMS                                    **Form 17**

## Form 15.  Complaint for Damages Under Merchant Marine Act

**1.** Allegation of jurisdiction.  [If the pleader wishes to invoke the distinctively maritime procedures referred to in Rule 9(h), add the following or its substantial equivalent: This is an admiralty or maritime claim within the meaning of Rule 9(h).]

**2.** During all the times herein mentioned defendant was the owner of the steamship _____ and used it in the transportation of freight for hire by water in interstate and foreign commerce.

**3.** During the first part of (month and year) at _____ plaintiff entered the employ of defendant as an able seaman on said steamship under seamen's articles of customary form for a voyage from _____ ports to the Orient and return at a wage of _____ dollars per month and found, which is equal to a wage of _____ dollars per month as a shore worker.

**4.** On June 1, 1936, said steamship was about _____ days out of the port of _____ and was being navigated by the master and crew on the return voyage to _____ ports. (Here describe weather conditions and the condition of the ship and state as in an ordinary complaint for personal injuries the negligent conduct of defendant.)

**5.** By reason of defendant's negligence in thus (brief statement of defendant's negligent conduct) and the unseaworthiness of said steamship, plaintiff was (here describe plaintiff's injuries).

**6.** Prior to these injuries, plaintiff was a strong, able-bodied man, capable of earning and actually earning _____ dollars per day. By these injuries he has been made incapable of any gainful activity; has suffered great physical and mental pain, and has incurred expense in the amount of _____ dollars for medicine, medical attendance, and hospitalization.

Wherefore plaintiff demands judgment against defendant in the sum of _____ dollars and costs.

(As amended Feb. 28, 1966, eff. July 1, 1966.)

### ADVISORY COMMITTEE NOTES

#### 1966 Amendment

See Advisory Committee's Note to Form 2.

## Form 16.  Complaint for Infringement of Patent

**1.** Allegation of jurisdiction.

**2.** On May 16, 1934, United States Letters Patent No. _____ were duly and legally issued to plaintiff for an invention in an electric motor; and since that date plaintiff has been and still is the owner of those Letters Patent.

**3.** Defendant has for a long time past been and still is infringing those Letters Patent by making, selling, and using electric motors embodying the pat-

ented invention, and will continue to do so unless enjoined by this court.

**4.** Plaintiff has placed the required statutory notice on all electric motors manufactured and sold by him under said Letters Patent, and has given written notice to defendant of his said infringement.

Wherefore plaintiff demands a preliminary and final injunction against continued infringement, an accounting for damages, and an assessment of interest and costs against defendant.

(As amended Jan. 21, 1963, eff. July 1, 1963.)

### ADVISORY COMMITTEE NOTES

#### 1963 Amendment

The prayer for relief is amended to reflect the language of the present patent statute, Title 35, U.S.C., § 284 (Damages).

## Form 17.  Complaint for Infringement of Copyright and Unfair Competition

**1.** Allegation of jurisdiction.

**2.** Prior to March, 1936, plaintiff, who then was and ever since has been a citizen of the United States, created and wrote an original book, entitled _____.

**3.** This book contains a large amount of material wholly original with plaintiff and is copyrightable subject matter under the laws of the United States.

**4.** Between March 2, 1936, and March 10, 1936, plaintiff complied in all respects with the Act of (give citation) and all other laws governing copyright, and secured the exclusive rights and privileges in and to the copyright of said book, and received from the Register of Copyrights a certificate of registration, dated and identified as follows: "March 10, 1936, Class _____, No. _____."

**5.** Since March 10, 1936, said book has been published by plaintiff and all copies of it made by plaintiff or under his authority or license have been printed, bound, and published in strict conformity with the provisions of the Act of _____ and all other laws governing copyright.

**6.** Since March 10, 1936, plaintiff has been and still is the sole proprietor of all rights, title, and interest in and to the copyright in said book.

**7.** After March 10, 1936, defendant infringed said copyright by publishing and placing upon the market a book entitled _____, which was copied largely from plaintiff's copyrighted book, entitled _____.

**8.** A copy of plaintiff's copyrighted book is hereto attached as "Exhibit 1"; and a copy of defendant's infringing book is hereto attached as "Exhibit 2."

**9.** Plaintiff has notified defendant that defendant has infringed the copyright of plaintiff, and defendant has continued to infringe the copyright.

EXHIBIT D

## O R D E R

At Wilmington this       day of              200_, the
parties having satisfied their obligations under Fed. R. Civ. P.
26(f), and the court having conducted a pretrial scheduling
conference pursuant to Fed. R. Civ. P. 16 and D. Del. LR 16.2(a)
and (b).

IT IS ORDERED that:

1. **Pre-Discovery Disclosures**. The parties [have exchanged]
[will exchange by _____(date)_____] the information required by
Fed. R. Civ. P. 26(a)(1) and D. Del. LR 16.2.

2. **Discovery**.

(a) Discovery will be needed on the following
subjects:  _(brief description of subjects on which discovery
will be needed)_.

(b) All fact discovery shall be commenced in time to
be completed by ___(date)___.

(1) Document production shall be completed on or
before _____.

(2) Maximum of _____ interrogatories by each party
to any other party.

(3) In the absence of agreement among the parties,
contention interrogatories, if filed, shall first be addressed by
the party with the burden of proof no later than the date
established for the completion of document production, with the

responsive answers due within thirty (30) days thereof.  The adequacy of all such interrogatory answers shall be judged by the level of detail each party provides; i.e., the more detail a party provides, the more detail a party shall receive.

(4)  Maximum of _____ requests for admission by each party to any other party.

(5)  In the absence of agreement among the parties or by order of the court, no deposition (other than those noticed under Fed. R. Civ. P. 30(b)(6)) shall be scheduled prior to the completion of document production.

(6)  Maximum of _____ fact depositions by plaintiff(s) and _____ by defendant(s).  Each fact deposition [other than of _____] limited to a maximum of ____ hours unless extended by agreement of parties.

**[OR]**

(7)  Maximum of _____ hours for fact depositions.

(c)  Expert discovery shall be commenced in time to be completed by _____.

(1) Expert reports on issues for which the parties have the burden of proof due _____.  Rebuttal expert reports due _____.

(2)  Expert depositions to be limited to a maximum of _____ hours unless extended by agreement of the parties.

2

(3)  All <u>Daubert</u> motions shall be filed on or before _____.

(d)  If willfulness has been asserted and absent agreement among the parties, the [defendant] must inform [plaintiff] as to whether it intends to rely on advice of counsel by _____(date)_____.  If the decision is to rely on such advice, the scope of discovery shall include the materials provided by [defendant] to its counsel and whatever other materials related to the issues in dispute that [defendant] had in its possession at the time the advice was sought.

(e)  Supplementations under Rule 26(e) due __(time(s) or interval(s))___.

(f)  **Discovery Disputes**.

(1)  The court shall conduct in-person discovery status conferences on _____ from _____ m. to _____ m., and on _____ from _____ m. to _____ m., the time to be allocated equally among the parties.

(2)  The court shall remain available to resolve by telephone conference disputes that arise during the course of a deposition and disputes over the terms of a protective order.

(3)  Absent express approval of the court following a discovery conference, no motions pursuant to Fed. R. Civ. P. 37 shall be filed.

3

(g) **Fact Witnesses to be Called at Trial.** Within one (1) month following the close of expert discovery, each party shall serve on the other parties a list of each fact witness (including any expert witness who is also expected to give fact testimony), who has previously been disclosed during discovery and that it intends to call at trial. Within one (1) month of receipt of such fact witness list, each party shall serve a list of each rebuttal fact witness that it intends to call at trial. The parties shall have the right to depose any such fact witnesses who have not previously been deposed in this case. Such deposition shall be held within one (1) month after service of the list of rebuttal fact witnesses and shall be limited to twenty (20) hours per side in the aggregate unless extended by agreement of the parties or upon order of the court upon good cause shown.

3. **Joinder of other Parties and Amendment of Pleadings.** All motions to join other parties and amend the pleadings shall be filed on or before _____.

4. **Settlement Conference.** Pursuant to 28 U.S.C. § 636, this matter is referred to Magistrate Judge Thynge for the purposes of exploring ADR.

5. **Claim Construction Issue Identification.** If the court does not find that a limited earlier claim construction would be helpful in resolving the case, on                , the parties

4

shall exchange lists of those claim terms that they believe need construction and their proposed claim construction of those terms. This document will not be filed with the court. Subsequent to exchanging such lists, the parties will meet and confer to prepare a Joint Claim Construction Statement to be submitted pursuant to paragraph 7 below.

6. **Summary Judgment Motions**. All summary judgment motions shall be served and filed with an opening brief on or before \_\_\_\_ _____. Briefing shall be pursuant to D. Del. LR 7.1.2. No summary judgment motion may be filed more than **ten (10)** days from the above date without leave of the court.

7. **Claim Construction**. Lawyers must identify, during the claim construction phase of the case, any claim language that will have a meaning to a person of ordinary skill in the art that differs from the ordinary meaning. Any language not so identified will be construed according to its ordinary meaning.

The parties shall agree upon and file the Joint Claim Construction Statement on _____, with the claim chart separately docketed. The parties will file simultaneous opening claim construction briefs on _____. Simultaneous response briefs should be filed by _____. Issues of claim construction shall be considered by the court in conjunction with the summary judgment motion(s). The hearing on the claim construction and motion(s) for summary judgment will be

5

heard on _____ at _____    .m.

    8.  **Applications by Motion**.  Any application to the court
shall be by written motion filed with the clerk.  **The court will
not consider applications and requests submitted by letter or in
a form other than a motion**, absent express approval by the court.

    (a) **Any non-dispositive motion should contain the
statement required by D. Del. LR 7.1.1.**

    (b) No telephone calls shall be made to chambers.

    (c) Any party with an **emergency** matter requiring the
assistance of the court shall e-mail chambers utilizing the "E-
mail Request for Emergency Relief" and "Opposing Counsel's
Response" forms posted on Chief Judge Robinson's website and e-
mail the completed forms to slr_civil@ded.uscourts.gov.  The e-
mail shall provide a short statement describing the emergency.
NO ATTACHMENTS shall be submitted in connection with said e-
mails.

    9.  **Motions in Limine**.  **No** motions in limine shall be filed;
instead the parties shall be prepared to address their
evidentiary issues at the pretrial conference and during trial
(before and after the trial day).

    10.  **Pretrial Conference**.  A pretrial conference will be
held on _____ at _____    m. in courtroom 6B, sixth
floor Federal Building, 844 King Street, Wilmington, Delaware.
The Federal Rules of Civil Procedure and D. Del. LR 16.4 shall

govern the pretrial conference.

    11.  **Trial**.  This matter is scheduled for a [day/week] bench/jury trial commencing on _____ in courtroom 6B, sixth floor Federal Building, 844 King Street, Wilmington, Delaware.  For purposes of completing pretrial preparations, the parties should plan on being allocated a total number of hours in which to present their respective cases.

 

_____
United States District Judge