IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ARCELOR FRANCE <br><br> and <br><br> ARCELOR ATLANTIQUE ET LORRAINE, <br><br> Plaintiffs, <br><br> v. <br><br> MITTAL STEEL USA INC, <br><br> Defendant. | Civil Action No. 06-307-SLR |

### DECLARATION OF ROBERT H. WAGONER, Ph.D. IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT

Professor Robert H. Wagoner declares and states that:

1. I am the George R. Smith Chair in the Department of Materials Science and Engineering and hold positions as a Professor of Mechanical Engineering and Director of the Center for Advanced Materials and Manufacturing of Automotive Components ("CAMMAC") at The Ohio State University in Columbus, Ohio.

2. I am a member of the National Academy of Engineering; Fellow of the Minerals, Metals, and Materials Society; and Fellow of ASM International. I served as President of the American Institute of Mining, Metallurgical, and Petroleum Engineers; President of the Minerals, Metals and Materials Society; President of the TMS

Foundation, Trustee of the United Engineering Foundation; and Trustee for the Edward F. Orton Jr. Ceramics Foundation.

3. A copy of my *curriculum vitae* is attached as Appendix I.

4. I am a citizen of the United States and received B.S., M.S., and Ph.D. degrees in Metallurgical Engineering from The Ohio State University in Columbus, Ohio.

5. I have been retained by the law firm of Oblon, Spivak, McClelland, Maier & Neustadt, P.C. to serve as an independent technical expert in the above-referenced litigation.

6. I make this declaration in support of the Opposition of Plaintiffs Arcelor France and Arcelor Atlantique et Lorraine to Defendant Mittal Steel USA, Inc.'s Motion to Dismiss the Complaint or, Alternatively, for Summary Judgment of Non-Infringement of U.S. Patent No. 6,296,805 based upon personal knowledge.

7. I have examined U.S. Patent No. 6,296,805 (the '805 patent) and the U.S. Patent & Trademark Office (PTO) prosecution history of the '805 patent.

8. I have read the declaration of Blake K. Zuidema, Ph.D. in support of Defendant's Motion to Dismiss the Complaint ("Dr. Zuidema's declaration").

9. Dr. Zuidema's declaration provides no assistance in understanding how one of ordinary skill in the art would understand the claim terms of the '805 patent, because he does not consider the '805 patent claims in view of the patent specification or the patent prosecution history.

10. Steel is made from an iron-containing liquid, which is solidified into solid form by either continuous or batch casting. The solid shapes are rolled, at high

2

temperature ("hot-rolling"), for two purposes: 1) to improve the properties as compared to the as-cast structure, and 2) to change the shape of the semi-finished product.

11. For flat steel products (sheet, strip, plate, and the like), the processing may end with a final hot-rolling step or may continue to be rolled subsequently near room temperature ("cold-rolling").

12. All flat steel products have been hot-rolled; some of them have been additionally cold-rolled. Cold-rolling following hot-rolling is typically performed for the purposes of obtaining a better surface finish and of attaining a smaller thickness. This additional finishing step involves extra cost.

13. All flat steel products that have been cold-rolled have previously been hot-rolled.

14. Flat-rolled steel products are often further characterized in the industry as sheet, strip or plate. These distinctions refer to details of width and thickness, although such terms are often used interchangeably and flexibly.

15. One of ordinary skill in the art would understand that the term "hot-rolled steel sheet" refers to any steel sheet that has been hot-rolled.

16. One of ordinary skill in the art, having read the '805 patent and prosecution history, would understand that the claim term "hot-rolled steel sheet" means any steel sheet that has been hot-rolled, including those that have been subsequently cold-rolled.

17. Thus, the claim term "hot-rolled steel sheet" includes those hot-rolled steel sheets that have been subsequently cold-rolled.

18. This understanding is confirmed by the disclosures of the '805 patent specification, including the following illustrative excerpts:

The invention relates to a coated, hot- and cold-rolled steel sheet comprising a very high resistance after thermal treatment.

(Col. 1, ll. 6-8).

At the time of continuous coating of flat hot- and cold-rolled products, preliminary annealing and cooling preceding or following the zinc- or aluminum-based coating operation, are used only to bring the sheet to a temperature close to that of the bath or to restore the mechanical properties of the sheet degraded at the time of cold-rolling.

(Col. 1, ll. 26-31).

The purpose of the invention is to produce a hot- or cold-rolled steel sheet of a desired thickness, coated, and affording extensive shaping possibilities and which, after thermal treatment performed on the finished casting, makes it possible to obtain a mechanical resistance in excess of 1000 MPa, a substantial resistance to shocks, fatigue, abrasion and wear, while retaining a good resistance to corrosion as well as a good capacity for painting and gluing.

(Col. 1, ll. 37-44).

The subject of the invention is a hot-rolled steel sheet, which then can be cold-rolled, coated, . . . .

(Col. 1, ll. 47-48).

The invention also concerns the use of the hot-rolled steel sheet which then can be cold-rolled and coated, for structural and/or anti-intrusion or substructure castings for a land motor vehicle, such as, for example, a bumper bar, a door reinforcement, a wheel spoke.

(Col. 2, ll. 30-34).

The sheet according to the invention which derives, by reason of its processing, from a hot-rolling mill, possibly may be cold-rerolled again depending on the final thickness desired. It then is coated with an aluminum-based coating, for example by dipping in a bath containing, in addition, from 8% to 11% silicon, from 2% to 4% iron, the sheet having a high mechanical resistance after thermal treatment and a high resistance to corrosion, as well as a good capacity for painting and gluing.

(Col. 2, ll. 37-45).

19. I found the following particularly illuminating:

4

> "The subject of the invention is a hot-rolled steel sheet, which then can be cold-rolled, coated, . . . ."

(Col. 1, ll. 47-48).

> "The sheet according to the invention which derives, by reason of its processing, from a hot-rolling mill, possibly may be cold-rerolled again . . . ."

(Col. 2, ll. 37-39). Therefore, one of ordinary skill in the art, having read the '805 patent would understand that the claim term "hot-rolled steel sheet" means any steel sheet that has been hot-rolled, including those that have been subsequently cold-rolled.

20. The '805 patent prosecution history also confirms that the claim term "hot-rolled steel sheet" means those hot-rolled steel sheets that have been subsequently cold-rolled.

21. Claim 1, as originally filed, reads as follows: "Hot-rolled steel sheet which then may be cold-rolled, coated, . . . ." This clarifies to one of ordinary skill in the art what the claim term "hot-rolled steel sheet" means; that is, any steel sheet that has been hot-rolled, including those that have been subsequently cold-rolled.

22. Original claim 1 was rejected for lack of definiteness on the ground that:

> the phrase "which then maybe [sic] be cold-rolled, coated" is indefinite since it is unclear if the steel sheet is coated or if it is optionally coated. For examination purposes, the claim has been treated as meaning [a] coated, hot-rolled steel sheet which may be optionally cold-rolled.

(1/19/01 Office Action, p. 3). This rejection did not relate to the definition of the terms "hot-rolled" or "cold-rolled." Rather, it related to whether coating was optional or required. Moreover, the examiner confirmed that one of ordinary skill in the art would understand that the claim term "hot-rolled steel sheet" does not exclude cold-rolled sheets

when she treated the claim term as meaning "[a] coated, hot-rolled steel sheet which may be optionally cold-rolled." (1/19/01 Office Action, p. 3.)

23. In response, applicants amended original claim 1 to clarify that the coating was not optional. Because the examiner's rejection was related to the question of whether the coating was required or optional, and not the scope of the term "hot-rolled steel sheet," there is no reason to interpret the amendment of claim 1 as changing the scope of the term "hot-rolled steel sheet." Thus, one of ordinary skill in the art would not interpret the amendment of claim 1 as changing the scope of this term. In fact, one of ordinary skill in the art would understand the scope of amended claim 1 to be the same as original claim 1 with regard to the claim term "hot-rolled steel sheet."

24. Applicants never disagreed with the examiner's understanding that the claim term "hot-rolled steel sheet" includes steel sheets which are subsequently cold-rolled. There is likewise no evidence that the applicants intended to exclude hot-rolled steel sheets which are cold-rolled after being hot-rolled.

25. I, Robert H. Wagoner, declare under penalty of perjury that the foregoing is true and correct.

Executed on May 31, 2006

_____
Robert H. Wagoner

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on June 7, 2006, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

>Philip A. Rovner
>POTTER ANDERSON & CORROON LLP

and that I caused copies to be served upon the following in the manner indicated:

### BY HAND

>Philip A. Rovner
>POTTER ANDERSON & CORROON LLP
>1313 North Market Street
>P.O. Box 951
>Wilmington, DE  19899-0951

/s/ Karen Jacobs Louden

Karen Jacobs Louden
klouden@mnat.com