## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ARCELOR FRANCE and ARCELOR ATLANTIQUE ET LORRAINE, | ) ) ) | |
| Plaintiffs, | ) ) | C. A. No. 06-307-SLR |
| v. | ) ) | |
| MITTAL STEEL USA INC., | ) ) | |
| Defendant. | ) ) | |

## DEFENDANT MITTAL STEEL USA INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT, OR ALTERNATIVELY, FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT

OF COUNSEL:

Joseph W. Berenato, III
Berenato, White & Stavish, LLC
6550 Rock Spring Drive, Ste. 240
Bethesda, Maryland 20817
(301) 896-0600

Kenneth B. Herman
Ropes & Gray
1251 Avenue of the Americas
New York, New York 10020-1105
(212) 596-9020

Dated: June 14, 2006

Philip A. Rovner (#3215)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
E-mail: provner@potteranderson.com

Attorneys for Defendant
Mittal Steel USA Inc.

# TABLE OF AUTHORITIES

## CASES

*Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.,*
    93 F.3d 1572 (Fed. Cir. 1996)............................................................................6

*Exxon Chemical Patents, Inc. v. Lubrizol Corp.,*
    64 F.3d 1553 (Fed. Cir. 1995)............................................................................6

*Hoffmann La Roche, Inc. v. Invamed Inc.,*
    213 F.3d 1359 (Fed. Cir. 2000)........................................................................13

*Judin v. U.S.,*
    110 F.3d 780 (Fed. Cir. 1997)............................................................................2

*Phonometrics, Inc. v. Hospitality Franchise Systems, Inc.,*
    203 F.3d 790 (Fed. Cir. 2000)............................................................................2

*SRI International v. Matsushita Electric Corp.,*
    775 F.2d 1107 (Fed. Cir. 1985)........................................................................15

*View Engineering, Inc. v. Robotic Vision Systems, Inc.,*
    208 F.3d 981 (Fed. Cir. 2000)......................................................................1, 12

## STATUTES AND RULES

35 U.S.C. § 112.....................................................................................................4

Fed. R. Civ. P. 8 ...................................................................................................2

Fed. R. Civ. P. 12(b)(6)....................................................................................2, 13

Fed. R. Civ. P. 56................................................................................................13

**TABLE OF CONTENTS**

I.    BECAUSE ARCELOR FAILED TO CONDUCT A PRE-FILING
      INVESTIGATION, ITS COMPLAINT SHOULD BE DISMISSED ............................ 1

II.   THE CLAIMS OF THE '805 PATENT DO NOT COVER
      COATED COLD-ROLLED SHEET ........................................................................ 3

      A.    The Background of the '805 Patent ............................................................ 3

      B.    The Meaning of Hot Rolled Sheet ............................................................. 3

            1.    Intrinsic Evidence ......................................................................... 4
            2.    Extrinsic Evidence ........................................................................ 7

III.  NO MITTAL PRODUCT IS A HOT-ROLLED COATED
      STEEL SHEET COATED WITH AN ALUMINUM
      OR ALUMINUM ALLOY COATING .................................................................. 11

IV.   ARCELOR CANNOT OBJECT TO DEFENDING AGAINST
      SUMMARY JUDGMENT AFTER FAILING TO MAKE
      A REASONABLE PRE-FILING INVESTIGATION ............................................ 13

      A.    Arcelor's Assertion That This Court Would Be
            Engaging In Piecemeal Claim Interpretation
            Is Without Merit ...................................................................................... 13

      B.    Mittal Is Entitled To Rely Upon The Claim Language
            Arcelor Selected In Defining Its Invention ............................................. 14

      C.    Arcelor Fails To Raise Any Genuine Issue Of Material
            Fact Which Would Preclude Summary Judgment ..................................... 16

CONCLUSION ............................................................................................................. 17

Arcelor's complaint should be dismissed because the very premise behind its action for patent infringement is fatally flawed. Arcelor's position, that it repeats over and over, is that, because *all* steel sheets, both hot-rolled steel and cold-rolled steel, include a hot rolling step in their manufacture, claim 1 of the '805 patent, which specifies only "hot rolled steel sheet," must cover both types of sheets. Arcelor's contention, however, is inconsistent with the specification and language of the claims of the '805 patent, and contradicted by the prosecution history of the patent.

Arcelor's litigation position not only stands in stark contrast to the understanding of those skilled in the art regarding the meaning of the terms "hot-rolled steel sheets" and "cold-rolled steel sheets," it is also contrary to the position Arcelor itself takes in administrative and legal proceedings in the international trade arena and in making the country-of-origin reports on its hot-rolled and cold-rolled products.

Simply stated, Mittal does not make, use or sell a coated hot-rolled steel sheet as that term is used in the '805 patent claims. This case therefore should be dismissed.

## I.    BECAUSE ARCELOR FAILED TO CONDUCT A PRE-FILING INVESTIGATION, ITS COMPLAINT SHOULD BE DISMISSED.

That Arcelor failed to conduct a proper pre-filing investigation into the basis of its infringement claims is not seriously disputed; indeed, Arcelor concedes as much. Under controlling Federal Circuit precedent, that fact alone mandates dismissal of Arcelor's complaint. *See View Engineering, Inc. v. Robotic Vision Systems, Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000)("In bringing a claim of infringement, the patent holder, if challenged, must be prepared to demonstrate to both the court and the alleged infringer exactly why it believed before filing the claim that it had a reasonable chance of proving infringement");

*see also Judin v. U.S.*, 110 F.3d 780 (Fed. Cir. 1997)("Determining infringement, however, requires that the patent claims be interpreted and that the claims be found to read on the accused devices").

Rather than present evidence demonstrating exactly why it believed before filing its complaint that it had a reasonable chance of proving infringement, Arcelor simply asserts that its complaint meets the notice requirements of Rule 8. [1]  In support of its position, Arcelor relies primarily on *Phonometrics, Inc. v. Hospitality Franchise Systems, Inc.*, 203 F.3d 790 (Fed. Cir. 2000).  That reliance, however, is misplaced.  While the district court's dismissal of patent infringement claims under Fed. R. Civ. P. 12(b)(6) was ultimately reversed in *Phonometrics*, the Federal Circuit made plain that the complaint must contain "enough detail to allow the defendants to answer."

Here, by contrast, Arcelor has not described the means by which Mittal allegedly infringes the '805 patent and instead premises its complaint "upon information and belief."  Nor has Arcelor described the means by which Mittal is allegedly inducing and contributing to infringement.  Thus, the *Phonometrics* case fails to support Arcelor's position.

Arcelor's complaint amounts to nothing more than bald assertions and legal conclusions.  Having failed to undertake any legally required analysis in its rush to file

---

[1] On page 10 of its Answering Brief, Arcelor posits a legal bright line litmus test for patent infringement complaints, stating "[A]s a matter of law, a complaint such as Arcelor's that conforms with Form 16 is clearly adequate to state a claim upon which relief can be granted."  By that standard, Arcelor's complaint is not adequate.  Form 16 recites an allegation that plaintiff has placed the required statutory notice on its products, and has given written notice to defendants.  As a matter of fact, Arcelor did not give Mittal written notice of alleged infringement, except by the complaint itself; and whether or not Arcelor has placed the required statutory notice on its products, its complaint alleged neither of the notices shown in Form 16.

suit, Arcelor's complaint should not be deemed legally sufficient. The complaint should
be dismissed.

## II.    THE CLAIMS OF THE '805 PATENT DO NOT COVER
## COATED COLD-ROLLED SHEET.

### A.    The Background of the '805 Patent

In an integrated steel mill, iron ore, coke and limestone are heated to create

molten iron. The molten iron is thereafter processed in a basic oxygen furnace into

molten steel. The molten steel is then solidified, either by casting into ingots or being

processed into slabs in a continuous caster. Thereafter, either while still hot or after

being reheated, the solidified steel slabs or ingots are rolled in a hot mill. The resulting

hot-rolled steel may be sold to end users and used as a distinct product for a variety of

purposes. Alternatively, the resulting steel may be re-rolled without reheating in a cold

mill and thereby be transformed into a new product known as cold-rolled sheet steel.

### B.    The Meaning of Hot Rolled Sheet

As used in the claims of the '805 patent, the phrase "hot-rolled coated steel sheet

comprising a hot-rolled steel sheet coated with an aluminum or aluminum alloy coating"

refers to a steel sheet which has been hot-rolled and then coated. That phrase does not

include steel sheets which have been hot-rolled, then cold-rolled and then coated. Those

sheets are called cold-rolled coated sheets, and Arcelor excluded coverage of cold-rolled

coated sheets from the claims.

### 1.    Intrinsic Evidence

The '805 specification describes two types of coated steel sheets – an aluminum-coated, hot-rolled steel sheet and an aluminum-coated, cold-rolled steel sheet. As the specification explains: "The purpose of the invention is to produce a hot- or cold-rolled steel sheet . . . ." (col. 1, lines 37-38). Cold-rolled sheets are described as an option. For example, the specification refers to "a hot-rolled and possibly cold-rolled sheet" (col. 3, lines 7-8).

The specification also describes the "continuous coating of flat hot- and cold-rolled products" (col. 1, lines 26-27), and explains that the coating occurs after the final rolling step, whether that final step is hot rolling or cold rolling:

> "The sheet according to the invention which derives by reason of its processing from a hot-rolling mill, possibly may be cold-rerolled again.. . .   It then is coated with an aluminum-based coating . . . ." (col. 2, lines 37-41)

In other words, sheet as described in the specification is either hot-rolled and then coated, or it is hot-rolled and then cold-rolled and only then coated. The former is a hot-rolled coated sheet and the latter is a cold-rolled coated sheet.

Claim 1 of the application as originally filed was directed to both types of coated steel sheets. Original claim 1 read "Hot-rolled steel sheet which then may be cold-rolled, coated, the steel in the sheet having the following composition by weight . . . ."

The patent examiner rejected Arcelor's original claims as indefinite under 35 U.S.C. § 112. The examiner also rejected the claims as obvious over the prior art, including art that disclosed and distinguished between hot-rolled sheets and cold-rolled sheets (*See*, Taylor, U.S. Patent No. 5,656,102 that was cited by the patent examiner

4

against the '805 patent)(" Rolled articles such as hot rolled or cold rolled and annealed sheet and/or strip", '102 Abstract).

In response, Arcelor amended claim 1 in three significant ways. First, Arcelor deleted the reference to "cold-rolled." Second, Arcelor replaced the deleted "cold-rolled" with a limitation to "hot-rolled." Third, Arcelor added "coated" to the "hot-rolled" limitation already present in the claim as originally filed. As amended, claim 1 reads:

"A hot-rolled *coated* steel sheet *comprising a hot-rolled steel sheet coated with an aluminum or aluminum alloy coating* wherein the steel in the sheet comprises the following composition by weight . . . ." (col. 4, lines 64-68) (amendments italicized).

With these amendments Arcelor elected to cover only the first type of steel sheet described in the '805 specification -- a coated hot-rolled sheet. Arcelor chose not to cover the second embodiment - - a sheet that had been first hot-rolled and then cold-rolled before coating, *i.e.*, - - a cold-rolled sheet.

Arcelor contends that the claims of the '805 patent cover both hot-rolled and cold-rolled coated steel sheets because all steel sheets are hot-rolled at some stage of the manufacturing process. Arcelor's proposed claim construction is wrong.

Arcelor's proposed claim construction is inconsistent with the specification and plain claim language of the '805 patent; and contrary to the prosecution history of that patent. Moreover, Arcelor's construction would improperly read limitations out of the claims.

Arcelor contends that by deleting the term "which then may be cold-rolled" from original claim 1, Arcelor was broadening the claim. Arcelor is wrong. Arcelor simply

ignores the other two amendments it made to its claims. Those amendments make plain that Arcelor excluded the optional coated cold-rolled steel sheets from the claims.

As a matter of law, all claim limitations must be considered. *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 93 F.3d 1572, 1582 (Fed. Cir. 1996), quoting *Exxon Chemical Patents, Inc. v. Lubrizol Corp.*, 64 F.3d 1553, 1557 (Fed. Cir. 1995). Under Arcelor's proposed claim construction, however, the amendment which Arcelor made to add "comprising a hot-rolled steel sheet" would be meaningless. According to Arcelor's expert, Dr. Wagoner, *all* steel sheets are hot-rolled at some stage in the manufacturing process. Therefore, that limitation to the claims must mean more than simply a reference to a step at some stage in the manufacturing process. That limitation identifies the type of sheet being coated – a hot-rolled sheet, not a cold-rolled sheet.

By the same token, if "hot-rolled" referred simply to a step in the manufacturing process, the reference to "hot-rolled" in the preamble would also be superfluous. By adding "coated" to the preamble, Arcelor was consistently defining the type of sheet to be coated - - a hot-rolled sheet, not a coated cold-rolled sheet.

Arcelor also contends that the fact that the specification refers to "a coated, hot- and cold-rolled steel sheet" means that "hot-rolled sheet" in claim 1 must encompass a cold-rolled sheet. Again, Arcelor is wrong. The specification repeatedly makes plain that cold rolling is an option – *e.g.* "which then can be cold-rolled" or "possibly may be cold-rerolled" (col. 1, line 48; col. 2, line 39). Original claim 1 recited this option. Amended claim 1 removed that option and limited the claim to a sheet which has only been hot-rolled.[2]

---

[2] Indeed, coated hot-rolled steel, as specified in claim 1, cannot later be cold-rolled. *See* Declaration of John W. Young, submitted contemporaneously herewith, ¶ 14 ("Young

To support its proposed claim construction, Arcelor points to the patent examiner's statement that: " For examination purposes, the claim has been treated as meaning A coated, hot rolled steel sheet which may be optionally cold rolled". Arcelor concludes that this means the examiner believed that the term hot- rolled sheets encompassed cold-rolled sheets. (Arcelor Br.7-8) Once again, Arcelor is wrong. The examiner was referring to the original claim which included the option of cold-rolling. *See* Berenato Dec., Ex. 2, p. 88.[3]

Arcelor, however, amended the claim to delete that option. Arcelor did so to overcome the rejection for indefiniteness. The examiner never suggested after Arcelor made its amendment that the claim encompassed cold-rolled sheets. It does not.

Put differently, as amended, claim 1 is directed to a sheet which is coated after being hot-rolled – a hot-rolled coated sheet – and does not cover a sheet which is coated after being cold-rolled – a cold-rolled coated sheet.

### 2.    Extrinsic Evidence

In construing claim 1, the Court may also look at the extrinsic evidence to see how those of skill in the art use the claimed terms. In its opening brief, Mittal set out some of that evidence. Arcelor, however, completely ignores that evidence in its opposition. That is not surprising. The extrinsic evidence confirms what the specification, claims, and prosecution history of the '805 patent make plain – the '805 claims are directed only to coated hot-rolled sheets, not to coated cold-rolled sheets.

---

Dec."). Arcelor's interpretation of the claim not only seeks to ignore the voluntary amendment but proposes a technically impossible process. Nothing in the '805 patent explains or suggests how coated hot-rolled steel may later be cold-rolled.

[3] The Berenato Dec. was filed on May 23, 2006 in conjunction with Mittal's Opening Brief in Support of its Motion to Dismiss (D.I. 9).

In the steel making industry, the terms hot-rolled and cold-rolled indicate the final major rolling step in the manufacture of the steel sheets (Young Dec., ¶ 11). A hot-rolled sheet is so called because the final major rolling step in the manufacturing process is hot rolling, and cold-rolled steel sheet is so called because the final major rolling step in the manufacturing process is cold rolling. *Id.*

Indeed, hot-rolled steel and cold-rolled steel are terms of art in the steel industry and are recognized as different products. *See* Declaration of Blake K. Zuidema, Ph.D., ¶5 ("Zuidema Dec.").[4] Hot-rolled and cold-rolled steel are considered different grades and have different microstructure and mechanical properties, such as tensile strength, hardness and malleability, and different surface characteristics, such as smoothness. *Id.* An end user may not merely substitute cold-rolled steel for hot-rolled steel and vice versa. *Id.* at ¶6.

Hot-rolled steel sheets and cold-rolled steel sheets are marketed as separate products. Arcelor, for example, advertises "hot-rolled coils" and "cold-rolled coils" (Zuidema, Dec. ¶7). A "coil" is wound sheet (Young Dec. ¶11). In its 2005 Annual Report, Arcelor also distinguishes between hot-rolled steel and cold-rolled steel (Zuidema Dec. ¶8).

That Arcelor advertises hot-rolled and cold-rolled sheets as separate and distinct products is not surprising; every other maker and seller of steel sheets does too. The U.S. International Trade Commission and its counterparts in other countries classify hot-rolled and cold-rolled steel as different products for duty payment purposes (Zuidema, Dec. ¶8). Indeed, in another legal venue where the difference between hot-rolled and cold-rolled

---

[4] The Zuidema Dec. was filed on May 23, 2006 in conjunction with Mittal's Opening Brief in Support of its Motion to Dismiss (D.I. 10).

8

steel is defined and has significant financial consequences -- *i.e.*, country of origin

determinations for purposes of collecting ordinary Customs duties and for the application

and enforcement of antidumping duty orders and the resulting payment of antidumping

duties -- Arcelor recognizes that cold-rolled and hot-rolled steel are completely separate

products. Arcelor's positions in country-of-origin decisions in such cases are particularly

instructive, given their bottom-line result: if a steel is considered to be the product of a

country where an antidumping duty order is in effect, antidumping duties will be assessed

on the merchandise.[5] Indeed, companies actively arrange their business affairs to give

specific products specific countries of origin, and thus minimize or avoid such duties.

For example, in Europe, it is not uncommon to produce steel slabs in one country, make

hot-rolled steel in another country, and make cold-rolled steel in another country, thereby

affecting the payment, or non-payment, of antidumping and/or countervailing duties.

     For purposes of determining country of origin for Customs purposes the United

States Bureau of Customs and Border Protection ("Customs") has held that "cold-rolled

steel is different from hot-rolled steel in that its production is carried out below

recrystallization temperatures, whereas hot-rolling is produced in temperatures above

recrystallization. The reduction process significantly reduces the thickness of the hot-

rolled product and results in a cold-rolled steel possessing greater tensile strength." (U.S.

Customs Decision (Aug. 7, 1991)).[6] (Exhibit 1 to the Declaration of Philip A. Rovner,

---

[5] The financial importance of international trade matters, including the imposition and effect of antidumping orders and countervailing duties is why, as cited in Mittal's Opening Brief, Arcelor reported on pending international trade matters in its 2005 Annual Report and in its report differentiated between hot-rolled and cold-rolled products.

[6] The cases cited herein involve stainless steel, rather than carbon steel; however, for purposes of the technical, commercial and legal principles at issue in this case, the differences between stainless steel and carbon steel are irrelevant. Young Dec. ¶15.

submitted contemporaneously herewith) ("Rovner Dec."). Since "the cold rolling process

alters the physical and mechanical properties of the steel" and cold-rolled steel "has a

name, character, and use different from that possessed by the hot-rolled flat-rolled steel,"

the steel becomes a product of the country in which the cold-rolling occurs. (U.S.

Customs Decision (Aug. 10, 2001) (Rovner Dec., Exhibit 2). "The cold-rolling process

changes the surface quality and mechanical properties of the product and produces useful

combinations of hardness, strength, stiffness, and ductility." *Stainless Steel Sheet and*

*Strip in Coils from Taiwan*, 70 Fed. Reg. 46,137, 46,143 (Aug. 9, 2005) (U.S. Dep't. of

Commerce Preliminary Results and Partial Rescission of Antidumping Duty

Administrative Review) (Rovner Dec., Exhibit 3).

     In recent proceedings at the Commerce Department, Arcelor itself has publicly

agreed that cold-rolling substantially transforms steel; and, more importantly, Arcelor

conducted itself accordingly by reporting its sales of cold-rolled steel as originating in the

country where cold-rolling occurred. *Stainless Steel Plate in Coils From Belgium*, Case

No. A-423-808 (U.S. Dep't. of Commerce Antidumping Duty Administrative Review for

period May 1, 2002 through April 30, 2003) (Rovner Dec., Exhibit 4). And in litigation

filed by Arcelor against the U.S. Commerce Department concerning country of origin of

hot-rolled steel, Arcelor's brief to the United States Court of Appeals for the Federal

Circuit not surprisingly presses Arcelor's position that coiled steel plate hot-rolled in

Germany (where no antidumping duty would apply) and not cold-rolled in Belgium

(where antidumping duties do apply) should be Germany. (*Ugine and Alz Belgium,*

*Arcelor Stainless USA, LLC, and Arcelor Trading USA, LLC v. United States*, CAFC No.

051550, Brief of Appellants filed October 31, 2005, at 10-12), (Rovner Dec., Exhibit 5).

Arcelor, however, ignores all of this in its brief.

## III.   NO MITTAL PRODUCT IS A HOT-ROLLED COATED STEEL SHEET COATED WITH AN ALUMINUM OR ALUMINUM ALLOY COATING.

Simply stated, Mittal does not manufacture, use or sell "hot-rolled steel sheet coated with aluminum or an aluminum alloy" as claimed in the '805 patent. *See* Zuidema Dec., ¶ 4. [7] Indeed, Arcelor nowhere identifies any Mittal product as infringing the '805 patent. Rather, Arcelor argues merely that it "has no means to test this statement [that Mittal does not manufacture any infringing products] without discovery about the composition of Mittal's products and how they are made, and how those products and processes apply to the claims of the '805 patent." *See* Plaintiff's Answering Brief, p. 21. Furthermore, counsel for Arcelor states that "Arcelor needs information essential to support a response to Mittal's motion. Specifically, Arcelor needs discovery concerning Mittal's products and processes and how they apply to the claims of the patent in suit." *See* Blumenfeld Dec., ¶ 4. *Those are the very inquiries Arcelor was required to make prior to filing suit* – not afterwards. The Federal Rules of Civil Procedure – while liberal in their pleading requirements – do not permit Arcelor to conduct a fishing expedition at Mittal's expense.

Arcelor does not specifically address its failure to conduct a pre-filing investigation, but seems to imply that it could not have conducted any investigation because "information about Mittal's products and processes is not publicly available." *Id.*

---

[7] Arcelor says that it identified the products alleged to infringe. (Arcelor Br. 3). Not so. Arcelor simply said that it had heard that Mittal was offering an aluminum-coated boron steel sheet. Mittal has no such product. Mittal made one roll of aluminum-coated cold-rolled boron steel for development purposes. That sheet was never sold or offered for sale. That is why Arcelor could not have made an appropriate pre-suit investigation. The issue on this motion, however, is not whether Mittal offered a product, but whether a cold-rolled coated sheet falls within the scope of the claims.

That Arcelor did not have unfettered access to Mittal's product line is no excuse for its
failure to comply with the requirement of conducting a reasonable and competent pre-suit
investigation. *See View Engineering*, 208 F.3d at 985 (rejecting the excuse that the
lawyers and client lacked physical access to the accused machines and therefore did not
perform the pre-filing investigation).

Furthermore, Arcelor never approached Mittal to notify it of the '805 patent or
ask for information to allow it to determine whether its suspicions were well-founded.
Arcelor also seems to imply that the burden of deciphering its complaint, after failing to
have conducted the pre-filing invention, should now shift to Mittal. After receiving the
complaint, Mittal wrote to counsel for Arcelor asking that Arcelor identify the products
alleged to infringe and the basis for the allegations. *See* Berenato Dec., Exhibit 3.
Arcelor's counsel responded by correspondence dated May 22, 2006, stating:

> Arcelor has received information it believes to be highly reliable that
> Mittal has offered an aluminum coated boron steel designed as a
> replacement for Usibor in hot stamping to prepare automobile parts.
> Based on the particular application, the product being offered must be an
> aluminum coated boron steel having a composition within that specified in
> the '805 patent.

*See* Berenato Dec., Exhibit 4. Arcelor does not have a patent on "aluminum coated boron
steel", and no Mittal product is a hot-rolled coated steel sheet. As such, Mittal cannot
discern which of its many products Arcelor may be referring to. Nor is Arcelor's
assertion that Mittal "must be" infringing based on some unidentified yet supposedly
"highly reliable" information sufficient. As set forth in Mittal's Opening Brief at page 5,
n. 3, Mittal has made cold-rolled steel during "a product development process." This
process involved a single coil, so Arcelor strains credulity by arguing that Mittal is
offering a product that competes with Arcelor's hot-rolled product. Arcelor seemingly

wishes to have a patent case based upon a so-far unidentified product and one which may never be marketed.

Mittal is not required to "request any further information from Arcelor." *See* Plaintiffs' Answering Brief, p. 3. It is the duty of the patent owner to seek from the accused infringer necessary information and then in its complaint may explain why its suit is well-taken. *Hoffmann La Roche, Inc. v. Invamed Inc.*, 213 F.3d 1359 (Fed. Cir. 2000).

## IV.   ARCELOR CANNOT OBJECT TO DEFENDING AGAINST SUMMARY JUDGMENT AFTER FAILING TO MAKE A REASONABLE PRE-FILING INVESTIGATION.

In opposition to summary judgment, Arcelor essentially argues that 1) Mittal is asking this Court to engage in piecemeal claim construction, 2) the claims of the '805 patent cover cold-rolled steel sheets, and 3) there are genuinely disputed material facts about Mittal's product.[8] Each of Arcelor's arguments is without merit.

### A.   Arcelor's Assertion That This Court Would Be Engaging In Piecemeal Claim Interpretation Is Without Merit.

Arcelor argues, "If the issue Mittal now raises is resolved in Arcelor's favor, however, Mittal will undoubtedly raise another, and then another after that." *See* Plaintiffs' Answering Brief, p. 16. If this Court dismisses Arcelor's complaint, then this matter is over. Rather than raise multiple issues, Mittal submits that either the case never should have been filed due to Arcelor's failure to conduct a proper pre-filing

---

[8] Arcelor also objects to Mittal's submission of declarations as being improper in a motion to dismiss. See Plaintiffs' Answering Brief, p. 12, ft. 8. As noted in Mittal's Opening Brief, a motion to dismiss under Fed. R. Civ. P. 12(b)(6) may be treated as a motion for summary judgment under Rule 56 if matters outside the complainant's pleading are presented to the court. Fed. R. Civ. Proc. 12(b).

investigation or the interpretation of Arcelor's claim is so clear that no extensive

discovery is required. Claim interpretation is, after all, an issue of law for the Court.

While summary judgment motions generally follow the completion of discovery,

in the present case Arcelor should not be heard to complain that it needs discovery from

Mittal. If Arcelor had conducted a satisfactory pre-filing investigation, it would possess

information about the Mittal product. Arcelor has not done this, and therefore cannot

identify any infringing Mittal product(s). Instead, Arcelor requests that it be allowed "to

take discovery concerning Mittal's products and processes and how they apply to the

patent claims." Thus, Arcelor essentially admits that, at this time, there is no basis for its

complaint.

**B.    Mittal Is Entitled To Rely Upon The Claim Language Arcelor
       Selected In Defining Its Invention.**

It can not be disputed that all of the claims of the '805 patent are directed to a hot-

rolled coated steel sheet. During prosecution of the '805 patent, application claim 1 was

originally directed to "Hot-rolled steel sheet, which then may be cold-rolled . . .." That

claim was rejected by the examiner at the U. S. Patent and Trademark Office. In

response to the rejection, claim 1 was amended to delete the reference to cold-rolled steel

and to add the claim element "A hot-rolled coated steel sheet . . . comprising a hot-rolled

steel sheet coated with an aluminum or aluminum alloy coating." (Berenato Dec., Exhibit

1, pgs. 106-118). As explained, coated hot-rolled steel cannot later be cold-rolled.

(Young Dec. ¶14). Having amended the claim as it did, Arcelor voluntarily surrendered

coverage of cold-rolled steel that is then coated. (Young Dec. ¶13).

The claims of the'805 patent define the scope of patent protection. *SRI Int'l v*

*Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) ("It is the claims that

measure the invention."). Mittal has not, nor does it now, make, use, sell, offer to sell or import a hot-rolled coated steel sheet "comprising a hot-rolled steel sheet coated with an aluminum or aluminum alloy coating" as claimed in the '805 patent. (Zuidema Dec. ¶4). Arcelor presents no evidence to the contrary. As such, Mittal cannot as a matter of law infringe literally the '805 patent.

Furthermore, Mittal cannot infringe under the doctrine of equivalents. In response to the rejection during prosecution of the '805 patent, claim 1 was narrowed. Arcelor asserts that claim 1 was rejected because there was an ambiguity as to whether 'the steel sheet is coated or if it is optionally coated.' *See* Plaintiffs' Answering Brief, p. 18. Arcelor's arguments now are irrelevant. The amendments to claim 1 were chosen by Arcelor in order to overcome the rejection. Having chosen to amend claim 1 by deleting the reference to cold-rolled steel and limiting the claim to "a hot-rolled steel sheet coated with an aluminum or aluminum alloy coating", Arcelor cannot now claim that it meant to cover cold-rolled coated steel. Arcelor chose voluntarily to limit its claims by expressly deleting "cold-rolled steel" from the claimed subject matter.

Despite the obvious limitation of the claims of the '805 patent, Arcelor attempts to argue that the '805 patent claims cover cold-rolled steel sheets and relies upon the Declaration of its expert Dr. Wagoner.

As explained earlier, Dr. Wagoner's reasoning is inconsistent with the specification, the clear language of the claims, and the prosecution history of the '805 patent. Furthermore, Arcelor's position is contrary to the understanding of those skilled in the art about the meaning of the terms hot-rolled steel sheets and cold-rolled steel sheets, as evinced by the Declarations of Dr. Zuidema and Mr. Young. Indeed, Arcelor's

own advertising literature and Annual Report distinguish between hot-rolled and cold-rolled steel products.  Zuidema Dec. ¶7.

### C.    Arcelor Fails To Raise Any Genuine Issue Of Material Fact Which Would Preclude Summary Judgment.

Arcelor argues that Mittal's motion should be denied because there are genuinely disputed material facts about Mittal's product.  However, Arcelor has not identified any infringing Mittal product(s), requesting instead that it be permitted leave to conduct discovery to evaluate Mittal's products and processes and how they apply to the patent claims.  Thus, Arcelor concedes that it is unaware of any Mittal product which infringes the '805 patent, or of any activity supporting its claims of inducing or contributing to infringement.  As such, Arcelor has failed establish a genuine dispute as to a material fact.  Accordingly, summary judgment in favor of Mittal is appropriate.

## CONCLUSION

For the foregoing reasons and those set forth in Mittal's Opening Brief in Support of its Motion to Dismiss, Mittal respectfully requests that its motion be GRANTED and the amended complaint be dismissed and that it be awarded such other and further relief as the Court deems appropriate. Alternatively, Mittal submits that there are no genuine disputes of fact material to the issue of infringement, and that summary judgment of non-infringement should be entered.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Joseph W. Berenato, III
Berenato, White & Stavish, LLC
6550 Rock Spring Drive, Ste. 240
Bethesda, Maryland 20817
(301) 896-0600

Kenneth B. Herman
Ropes & Gray
1251 Avenue of the Americas
New York, New York 10020-1105
(212) 596-9020

Dated: June 14, 2006

736617

By: _____
        Philip A. Rovner (#3215)
        Hercules Plaza
        P.O. Box 951
        Wilmington, DE 19899
        (302) 984-6000
        E-mail: provner@potteranderson.com

        Attorneys for Defendant
        Mittal Steel USA Inc.

17

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on June 14, 2006, the within document

was filed with the Clerk of the Court using CM/ECF which will send notification of such

filing(s) to the following; that the document was served on the following counsel as indicated;

and that the document is available for viewing and downloading from CM/ECF.

### BY HAND DELIVERY

Jack B. Blumenfeld, Esq.
Karen Jacobs Louden, Esq.
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899
jblumenfeld@mnat.com
klouden@mnat.com

Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P. O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com