IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ARCELOR FRANCE and ARCELOR ATLANTIQUE ET LORRAINE, | ) ) ) | |
| Plaintiffs, | ) ) | C. A. No. 06-307-SLR |
| v. | ) ) | |
| MITTAL STEEL USA INC., | ) ) | |
| Defendant. | ) | |

### DECLARATION OF JOHN W. YOUNG IN SUPPORT OF MITTAL'S MOTION TO DISMISS THE COMPLAINT

OF COUNSEL:

Joseph W. Berenato, III
Berenato, White & Stavish, LLC
6550 Rock Spring Drive, Ste. 240
Bethesda, Maryland 20817
(301) 896-0600

Kenneth B. Herman
Ropes & Gray
1251 Avenue of the Americas
New York, New York 10020-1105
(212) 596-9020

Dated: June 14, 2006

Philip A. Rovner (#3215)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
E-mail: provner@potteranderson.com

Attorneys for Defendant
Mittal Steel USA Inc.

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| ARCELOR FRANCE and ARCELOR ATLANTIQUE ET LORRAINE,<br>Plaintiff,<br><br>v.<br><br>MITTAL STEEL USA INC.,<br><br>Defendant. | Civil Action No. 06-307<br><br>DECLARATION IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER FED. R. CIV. PROC. 12(b)(6) |

John W. Young declares and states that:

1. I am a citizen of the United States and am a retired employee of A K Steel Company, Middletown, Ohio having spent thirty eight and one half years in the Research Department of Armco Steel and subsequently A K Steel. I have a BS degree in Metallurgical Engineering from North Carolina State University and an MS degree in Metallurgical Engineering from The Ohio State University.

2. During my employment I held the following positions:

- Manager, Carbon Steel Research (ARMCO)- The group was responsible for product and process development, basic research, and technical service for all low carbon and high strength steel products. Research and technical service in mill lubricants and process fluids was also included.

- General Manager – Administration & Product Improvement (ARMCO) - Management of an engineering group responsible for product improvement of electrical and stainless steels. Product improvement encompassed work on resolution of quality issues on all electrical and stainless products. The position also included general business management

1

of the Research Department. Such as general accounting, budgeting and project accounting. I also managed the Building Services Group, Information Services Group, Intellectual Property Group and outside sales of Research services.

- Manager – Specialty Steel Product Research (AK STEEL) - (Title change due to Research reorganization under AK Steel) - Management of an engineering group responsible for product development and improvement of electrical and stainless steels and specialty steel advanced customer service. Product improvement encompassed work on resolution of quality issues on all electrical and stainless products.

3. I also served on the following industry groups:

- Chairman – ASTM Subcommittee L-IV-3 on Rolling Oil Testing (1974-1988);
- Chairman – ASTM Subcommittee L-IV on Metal Deformation Fluids (1974-1988);
- Chairman – ASTM Technical Division N on Hydraulic Fluids (1975-1988
- Member AIME Mechanical Working & Steel Processing Division – Flat Rolled Products Committee (1980-1986);
- 2nd Vice Chairman ASTM Committee D-2 (1980-1988);
- Chairman – ASPT Task Force on Uniformity of Materials properties (1987-1993).

4. I have been retained by the law firm of Berenato, White & Stavish, LLC to serve as an independent technical expert in the above referenced litigation.

5. In the course of my employment I have become familiar with the manufacture of steel, including both hot-rolled steel, cold-rolled steel, and coated steel sheet. In addition, I am familiar with the differences between the products, the processes used to create them, and the machinery used in their manufacture.

6. I make this declaration in support of the Defendant's motion to dismiss the complaint for failure to state a claim under Fed. R. Civ. Proc. 12(b)(6) or, alternatively, for summary judgment of non-infringement.

7. I have examined U S Patent No. 6,296,805 (the '805 patent) and the prosecution history of the '805 patent before the U S Patent and Trademark Office (PTO).

8. I have read the Declaration of Dr. Blake K. Zuidema, Ph. D. in support of Defendant's motion to dismiss the complaint ("Dr. Zuidema's declaration) and the Declaration of Professor Robert H. Wagoner Ph.D. in support of the Plaintiff's opposition to Defendant's motion to dismiss the complaint (Dr. Wagoner's declaration)

9. Dr. Wagoner's declaration's central point is that since the patent specification contains references to the possibility of producing a coated cold-rolled product, presumably with characteristics embodied in the hot-rolled product, Claim 1 encompasses both a coated hot-rolled steel sheet and a coated cold-rolled steel sheet. I disagree. While it is true that in the production of a cold-rolled or coated cold-rolled product a hot-rolled intermediate product is produced initially and subsequently cold-rolled, the term "hot-rolled steel sheet" is not used in the steel industry to mean "cold-rolled steel sheet" or "coated cold-rolled sheet". The declaration of Dr. Blake K. Zuidema, Ph. D. supports this fact. Indeed, throughout the '805 patent text a distinction is clearly made between hot-rolled steel sheet and cold-rolled steel sheet. For example; the '805 patent at Col. 1, lns. 26-27 reads, "At the time of continuous annealing of flat hot- and cold-rolled products ----". At Col. 1, lns. 37-38 the patent reads "The purpose of this invention is to produce a hot or cold-rolled steel sheet ----". One skilled in the art, having read the '805 patent and its prosecution history, would conclude that since references to a cold-rolled product or coated cold-rolled product were not included in claim 1 (in fact, the wording "which then may be cold-

rolled, coated" was removed by amendment after a rejection by the examiner) the intent and fact is that the '805 patent covers only a coated hot-rolled product. Further evidence of the limitation of Claim 1 to only a coated hot-rolled product is the complete lack of any reference to a cold-rolled or coated cold-rolled product in any of the dependent patent claims. While the applicants could have attempted to describe the steel product more generally, such as a "coated steel sheet" or a "steel sheet" or "flat rolled steel" in the independent claim to assure coverage of all product forms, this was not done.

10. From the perspective of one of ordinary skill in the steel making industry, the patent specification discloses two different steel products. The first is coated hot-rolled steel. The other is coated cold-rolled steel. These are considered to be different products within the steel industry. For a particular chemical composition of any steel, hot-rolled and cold-rolled steel are considered different grades and have different properties as a result of the cold rolling process, with the differences including different granular microstructures, different mechanical properties such as tensile strength, hardness and malleability, and different surface characteristics, such as smoothness. Hot-rolled and cold-rolled steels can be differentiated by their surface texture, their grain structure, the size and distribution of their precipitates, and their overall and through-thickness grain orientation. As stated by Dr. Zuidema in his declaration, these differences can be easily detected by instruments found in most modern steel laboratories.

11. In the steel making industry, the term "hot-rolled sheet" refers to the fact that the last major rolling step performed on the sheet was hot rolling performed in the hot mill

4

and the term "cold-rolled sheet" refers to the fact that the last major rolling step performed on the sheet was cold rolling in the cold mill. The hot mill and cold mill are separate facilities. One cannot cold roll steel in the hot mill. Coating of a steel sheet takes place after the last rolling step. The coated sheet is then wound into a coil which is shipped to the customer.

12. Because the patent specification discloses two different types of steel products, then it is clear that the applicants chose in claim 1 to cover only the hot-rolled form. There are generic terms within the steel industry, such as flat rolled, that apply to both hot-rolled and cold-rolled steel, but claim 1 was amended without resort to generic terminology. Instead, the claim was amended to "hot-rolled steel sheet coated with an aluminum or aluminum alloy coating". Not only did Arcelor delete reference to "cold-rolled" but it added specific reference to "hot-rolled" so that "hot-rolled" appears both in the preamble or introductory portion of the claim and also again in the body of the claim.

13. Once the claim had been rejected, there conceivably were ways Arcelor could have amended Claim 1 to include a coated cold-rolled product and satisfy the examiner's objection to the lack of definiteness. My understanding is that the content of claims is the responsibility of the patent applicant, not the examiner. Arcelor chose to eliminate the reference to a cold-rolled product in any of the final claims even though it was included previously and not precluded by the examiner. Deleting the words "which may be optionally cold-rolled" from Claim 1 changed the scope of the original claim and further limited the claim. Therefore I disagree with Dr. Wagoner's assertion "that there is no reason to interpret the amendment of claim 1 as changing the scope of the

5

term hot-rolled sheet steel". The very essence of the amendment was to limit the claim to hot-rolled sheet.

14. Moreover, the claim specifies a "hot-rolled steel sheet coated with an aluminum or aluminum alloy coating". Because the hot-rolled sheet has been coated, it cannot thereafter be cold-rolled. During the processes of hot-rolling and cold-rolling, the steel is reduced in its gauge or thickness, because the steel is squeezed by the rolls. As a result of the thickness reduction, the length and/or width of the steel increases. A coated hot-rolled sheet cannot thereafter be cold rolled, because the steel would need to be separated from the coating in order to accommodate the dimensional changes in the steel occurring as a result of the cold rolling process. Hence, Dr. Wagoner's declaration fails to take into account the physical processing of the coated steel. No engineer in the steel industry would seek to cold-roll coated hot-rolled steel sheet. Rather, the sheet would first be cold-rolled and thereafter coated. Thus, the claim language confirms that the coated hot-rolled steel is simply that and not steel that after being coated may then be cold-rolled.

15. I am informed that in international trade cases involving stainless steel, Arcelor has taken the position that hot-rolled stainless steel is a different product from cold-rolled stainless steel because of the differences between hot-rolling and cold-rolling and differences in the properties between hot-rolled and cold-rolled products. Although the '805 patent concerns carbon steel and not stainless steel, the differences between them are irrelevant for purposes of whether or not one skilled in the art of steelmaking would consider hot-rolled steel sheet a different product from cold-rolled steel sheet. Steel makers, steel sellers, steel buyers and steel users recognize hot-

rolled and cold-rolled steel sheet, whether stainless steel or carbon steel, as being different products.

Further Declarant Sayeth Naught.

Subscribed to under penalty of perjury.

Dated: June 14, 2006

John W. Young

7

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

<u>CERTIFICATE OF SERVICE</u>

I, Philip A. Rovner, hereby certify that on June 14, 2006, the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following; that the document was served on the following counsel as indicated; and that the document is available for viewing and downloading from CM/ECF.

<u>BY HAND DELIVERY</u>

Jack B. Blumenfeld, Esq.
Karen Jacobs Louden, Esq.
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899
jblumenfeld@mnat.com
klouden@mnat.com

/s/ Philip A. Rovner
Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P. O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com